**UNITED STATES  v.  TUTEUR.**
No. 11040.

United States Court of Appeals
Seventh Circuit.
Aug. 19, 1954.

Pearl M. Hart, Edmund Hatfield, Chicago, Ill., for petitioner.

Robert Tieken, U. S. Atty., John Peter Lulinski, Anna R. Lavin, Asst. U. S. Attys., John M. McWhorter, Dist. Counsel, Immigration & Naturalization Service, Chicago, Ill., for respondent.

Before MAJOR, Chief Judge, and SWAIM and SCHNACKENBERG, Circuit Judges.

SCHNACKENBERG, Circuit Judge.

By this appeal we are asked to review a summary judgment canceling respondent's certificate of naturalization, which had been issued under an order of the Superior Court of Clark County, at Vancouver, Washington, on January 2, 1945.

The present proceedings arose in the District Court on June 25, 1951, when the United States attorney for the Northern District of Illinois filed the petition of the United States of America, pursuant to section 338 of the Nationality Act of 1940,[1] alleging *inter alia,* that in the course of said naturalization proceeding, to-wit, on May 23, 1944, respondent gave certain testimony, including the following: He was asked,

(16) "Have you ever received and/or distributed or assisted in distributing any pamphlets, papers, magazines, or periodicals, issued by any foreign government or agency, or by any organization or association whose membership is limited by nationality, or racial descent?"

to which he replied:

"Sometimes my wife receives a pamphlet from the British government. It is titled 'Labor in Britain.' We do not distribute it."

He also was asked:

(17) "Give a list of all papers, periodicals, magazines or other publications to which you subscribe, or which you receive, directly or indirectly, or read fairly regular, either at home, at the library, or in any other place? If any are published in a foreign language, specify which."

His answer was:

"Union Papers. Life. Time. Look. The Oregonian and the Journal."

The petition alleged that said testimony of the respondent was false, fraudulent, and untrue, in that:

"(a) He had received Information Bulletins published by the Russian Embassy in Washington; and

(b) He had also subscribed to and received the publications 'Peoples World,' 'New Masses,' 'New World.'"

The petition charged that said false testimony "was given for the purpose of deceiving the Immigration and Naturalization Service, preventing a full and proper investigation of his qualifications for citizenship, and of procuring and obtaining naturalization in violation of law."

The petition alleged that respondent was admitted to citizenship by order of the Superior Court of Clark County, Washington, and a certificate of naturalization was issued to him, the said court having relied upon the truth and good faith of the testimony given by the respondent herein in the course of the said naturalization proceeding. It further

1. 8 U.S.C.A. § 738 (1940 edition), now § 1451.

alleged that the naturalization was illegally and fraudulently procured in that respondent "deliberately and intentionally made false statements in the proceedings leading to his naturalization, concerning his subscription to and receipt of various publications, for the purpose of obtaining naturalization in violation of law, as is more particularly set forth in the preceding paragraphs." The petition prayed that said order be revoked and set aside and that the certificate of naturalization be canceled, etc. By his amended answer to the petition, respondent admitted the questions and answers set forth in the petition and as above quoted, but denied that said testimony was false, fraudulent and untrue, and denied that such testimony was given for the purpose of deceiving the Immigration and Naturalization Service, and denied that he deliberately and intentionally made false statements in the proceedings leading to his naturalization, concerning his subscription to and receipt of various publications, for the purpose of obtaining naturalization in violation of law.

On January 7, 1952, petitioner filed a motion for summary judgment in favor of the United States on the ground that there was no genuine issue as to any material fact, pursuant to rule 56 of the Federal Rules of Civil Procedure, 28 U.S.C.A.

1. There was attached to the motion as an exhibit what purports to be a transcript of testimony given by respondent before the United States Naturalization Examiner at Portland, Oregon, on February 8, 1945.

This document is not sworn to in any way. It is not an affidavit. Respondent contends that it is not proper to consider it in support of the motion for summary judgment. We agree. Rule 56 provides:

"(c) * * * The judgment sought shall be rendered forthwith if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

We, therefore, do not consider the transcript.

2. In 598 Cases, Each Containing 24 Cans, More or Less of Tomatoes v. U. S., 7 Cir., 211 F.2d 249, 251, we said:

"Factual issues are not to be tried or resolved by summary judgment procedure. Once it is determined that there exists a genuine and material factual issue, summary judgment may not be granted. In making this determination doubts (of course the doubts are not fanciful) are to be resolved against the granting of summary judgment. If a conflict appears as to a material fact the summary procedure does not apply unless the evidence on one or the other hand is too incredible to be accepted by reasonable minds or is without legal probative force even if true. Dewey v. Clark, 86 U.S.App.D.C. 137, 180 F.2d 766, at page 772."

In a naturalization proceeding the court, before it can enter an order for naturalization, must find as a matter of fact first, that certain indispensable legal requirements for naturalization have been fulfilled and, secondly, if such requirements have been fulfilled, whether the applicant for citizenship should be granted naturalization in view of his beliefs, background, etc. As to the requirements in the first class, if compliance therewith does not exist, an order of naturalization is subject to revocation on the ground of illegal procurement [2] regardless of whether it was based upon false statements given by the applicant intentionally or unintentionally. As to the court's exercise of its discretion, in the second class, in order to set aside an order of naturalization on the ground of fraud [3] because

2. 8 U.S.C.A. § 738 (1940 edition).

3. ibid.

of false testimony given by the applicant to influence the court in its action, it is necessary for the government to prove that the said testimony of the applicant was intentionally false. In other words, the government in the latter situation must allege and prove fraud, in which an essential element is intent.

In the petition in this case the allegations in reference to false statements alleged to have been made by respondent fall in the second class. To be actionable they must be connected directly with allegations of intent on his part to deceive. The respondent in his answer expressly denies that the testimony under attack was false, fraudulent and untrue. He also denies that it was given for the purpose of deceiving the Service, and he denies that he deliberately and intentionally made the false statements attributed to him in the petition. Thereby he created a distinct factual issue as to intent, which was a necessary element of the petitioner's case. Summary judgment procedure does not apply to such a situation, because a question of intent is a question of fact.

For these reasons the summary judgment must be reversed and the cause remanded for trial upon the issues presented by the pleadings.

3. Respondent by his amended answer contends that the District Court did not acquire jurisdiction over him in this action, for the reason that respondent did not have the sixty days' "personal notice" of this action, which is required by statute. It is stipulated that a return of summons herein states that service "was effected" on the wife of respondent, i. e., Mrs. Charles Anthony Tuteur, by a deputy U. S. marshal. Respondent relies upon the following statutory provisions:[4]

"(b) The party to whom was granted the naturalization alleged to have been fraudulently or illegally procured shall, in any such proceedings under subsection (a) of this section, have sixty days' personal notice in which to make answer to the petition of the United States * * *."

A motion to dismiss the "complaint", filed January 7, 1952, did not raise this jurisdictional point. It was raised in the District Court by an additional motion filed by respondent on July 16, 1952, to dismiss the "complaint". Respondent filed an answer and an amended answer to the petition, in both of which he relied upon this same jurisdictional point in addition to pleading to the merits of the petition. On October 14, 1953, the court made a finding that notice and manner of service was sufficient to meet the requirement of the statute and overruled respondent's motions to strike the petition for want of proper notice and summons.

The record being devoid of any showing as to when the service of summons was effected upon the wife of the respondent, he does not, and of course cannot, make any contention based upon the date of service. The controlling question, therefore, is what kind of notice is required by the term "personal notice". Giving to the words their commonplace meaning, personal notice is communication of information, orally or in writing, according to the circumstances, directly to the person affected or to be charged. 66 C.J.S., Notice, § 8, p. 641.

Notice in its legal sense may be defined as information concerning a fact, actually communicated to a person by an authorized person, or actually derived by him from a proper source. Notice is regarded in law as actual when the person sought to be affected by it knows thereby of the existence of the particular fact in question. 66 C.J.S., Notice, § 2, pp. 635, 637.

The order from which the present appeal was taken was not entered by default for want of appearance by the respondent. There is no proof in the

4. 8 U.S.C.A. § 738 (1940 edition).

record of a plain statement by him that he did not have personal notice that the petition of the United States had been filed in the court below. On the other hand, the circumstances shown by the record before us affirmatively prove that about 6½ months after the petition was filed, *i. e.*, on or about January 7, 1952, respondent appeared by his present attorneys and filed a written motion to dismiss the "complaint", in which he raised no question in regard to his having had no personal notice of the proceeding. Over a year after the petition was filed, *i. e.*, July 16, 1952, respondent by the same attorneys filed an additional motion to dismiss the "complaint", in which he for the first time raised the question which we are now considering. These undisputed facts of record have sufficient probative value to sustain the trial judge's finding that the notice was sufficient. Standing uncontradicted, they prove that respondent personally and actually had received notice of the pendency of the petition. On no other basis can his retention of counsel and the filing of several motions and answers by them on his behalf be explained.

The statute makes no reference to *service* of the required notice and indeed the method of giving the required notice is not specified by the statute. If, as a matter of fact, personal notice to the respondent results from any method which petitioner uses, the purpose of the statutory provision has been met and no rights of the respondent have been infringed.

4. In his amended answer respondent also contended that the petition herein was filed without supporting affidavit in contravention of section 338 of the Nationality Act, 8 U.S.C.A. § 738. This statutory provision reads:

"(a) It shall be the duty of the United States district attorneys for the respective districts, upon affida-

vit showing good cause therefor, to institute proceedings in any court specified in subsection (a) of section 701 in the judicial district in which the naturalized citizen may reside at the time of bringing suit, for the purpose of revoking and setting aside the order admitting such person to citizenship and canceling the certificate of naturalization on the ground of fraud or on the ground that such order and certificate of naturalization were illegally procured."

In this court respondent argues that the District Court should have dismissed the petition for lack of jurisdiction over the person of respondent, in that the action was instituted without supporting affidavit showing good cause therefor in violation of the said statutory provision, and that the petition itself is insufficient thereunder because it fails to show on its face that this action was instituted upon affidavit showing good cause therefor. This contention is without merit. In Schwinn v. United States, 9 Cir., 112 F.2d 74, the same contention was made and the court disposed of it at page 75, saying:

"This affidavit is not jurisdictional, but merely makes it the duty of the district attorney to proceed. The district attorney could institute proceedings of this character *sua sponte* whenever he had reason to believe that the law had been violated in the respect alleged in the petition."

The court below erred in entering summary judgment, and we therefore reverse the said judgment and remand the cause for further proceedings not inconsistent with this opinion. Chief Judge Major concurs in this opinion and the result. Judge Swaim concurs in the result.

Reversed and remanded.