## UNITED STATES *v.* ZUCCA, ALIAS SARNI.

No. 213.   Argued January 24–25, 1956.—Decided April 30, 1956.

*J. F. Bishop* argued the cause for the United States. With him on the brief were *Solicitor General Sobeloff, Assistant Attorney General Olney, Gray Thoron, Beatrice Rosenberg* and *L. Paul Winings.*

*Orrin G. Judd* argued the cause for respondent. With him on the brief was *Earle K. Moore.*

MR. CHIEF JUSTICE WARREN delivered the opinion of the Court.

This is a denaturalization proceeding under § 340 (a) of the Immigration and Nationality Act of 1952.[1]   The sole question is whether § 340 (a) makes the filing of the "affidavit showing good cause" a prerequisite to maintenance of the suit.   The District Court held that it does

---

[1] 66 Stat. 163, 260, as amended, 68 Stat. 1232, 8 U. S. C. (Supp. II) § 1451 (a).

and ordered the complaint dismissed unless the Government filed an affidavit showing good cause within 60 days. As this was not done, the complaint was dismissed without prejudice to the Government's right to institute an action to denaturalize the respondent upon filing the affidavit. 125 F. Supp. 551. On appeal by the Government the Court of Appeals for the Second Circuit affirmed, adopting the opinion of the District Court. 221 F. 2d 805. We granted certiorari, 350 U. S. 817, because of an asserted conflict with decisions of the Seventh[2] and Ninth[3] Circuits and because of the importance of the question in the administration of the immigration and naturalization laws.

Respondent Ettore Zucca was naturalized on January 4, 1944. In 1954, the United States Attorney for the Southern District of New York, proceeding under § 340 (a), filed a verified complaint in the United States District Court in his District seeking revocation of respondent's naturalization on the grounds of illegality, concealment of material facts, and willful misrepresentation.

The complaint alleged that respondent, at his naturalization hearing and in his petition for naturalization, had falsely sworn "that he did not belong to and was not associated with any organization which teaches or advocates the overthrow of existing government in this country . . . ," that it was his "intention in good faith to become a citizen of the United States and to renounce absolutely and forever all allegiance and fidelity to any [foreign powers] . . . ," and that he was and had been "attached to the principles of the Constitution of the United States and well disposed to the good order and happiness of the United States." This was followed by

---

[2] *United States* v. *Tuteur,* 215 F. 2d 415.

[3] *Schwinn* v. *United States,* 112 F. 2d 74, affirmed *per curiam,* 311 U. S. 616.

a general allegation of membership in the Communist Party and "other organizations affiliated with or controlled by the Communist Party of the United States from 1925 to 1947," and equally general allegations that respondent procured his naturalization by concealment and willful misrepresentation in that he concealed the facts relating to his membership in the Communist Party and affiliated organizations and otherwise swore falsely as to his intentions and beliefs. The pleader concluded that "good cause exists for the institution of this suit . . . ." The complaint, no part of which was alleged on information and belief, was verified by an Assistant United States Attorney. When respondent sought to take depositions of this Attorney, he was met with an affidavit in opposition denying personal knowledge.[4] Respondent then filed his motion to dismiss on the ground, *inter alia,* that § 340 (a) required the filing of an affidavit showing good cause and that this requirement had not been complied

---

[4] The affidavit read as follows:

"GEORGE C. MANTZOROS, being duly sworn, deposes and says as follows:

"That he is one of the Assistant United States Attorneys on the staff of J. Edward Lumbard, United States Attorney for the Southern District of New York in charge of the above-entitled case.

"That the only knowledge or information which he has in this case has been obtained through files turned over to him for use in preparation of the complaint.

"That he has no personal knowledge of any of the facts herein and is not a prospective witness.

"That on information and belief his superior, the said J. Edward Lumbard likewise has no personal knowledge of any of the facts herein and is not a prospective witness.

"That he has carefully reviewed the files in this case and finds nothing therein which would indicate any special or unusual circumstances requiring the production of the documents requested by the defendant in his notice to take depositions, dated July 8, 1954.

"That many of the documents in said files are privileged because of their confidential nature." R. 8.

with. As stated above, the motion to dismiss was granted on this ground.

The Government argues that a reading of the statute and its legislative history leads to the conclusion that the filing of an "affidavit showing good cause" is not a prerequisite to maintaining denaturalization proceedings under § 340 (a). We do not agree.

The affidavit provision with which we are here concerned first appeared in § 15 of the Act of June 29, 1906.[5] Without substantial change, it was carried forward in the laws of 1940[6] and 1952,[7] currently reading as follows:

> "SEC. 340. (a) It shall be the duty of the United States district attorneys for the respective districts, *upon affidavit showing good cause therefor,* to institute proceedings in any court specified in subsection (a) of section 310 of this title in the judicial district in which the naturalized citizen may reside at the time of bringing suit, for the purpose of revoking and setting aside the order admitting such person to citizenship and canceling the certificate of naturalization on the ground that such order and certificate of naturalization were procured by concealment of a material fact or by willful misrepresentation, . . . ."
> (Emphasis added.)

Were we obliged to rely solely on the wording of the statute, we would have no difficulty in reaching the conclusion that the filing of the affidavit is a prerequisite to maintaining a denaturalization suit. This conclusion is not altered by a consideration of the Government's highly

---

[5] 34 Stat. 596, 601.

[6] Section 338 (a) of the Nationality Act of 1940, 54 Stat. 1137, 1158.

[7] 66 Stat. 163, 260, as amended, 68 Stat. 1232, 8 U. S. C. (Supp. II) § 1451 (a).

speculative suggestions as to the meaning of the legislative history.   On the contrary, we think that it is entirely consistent with the Court's statement in *Bindczyck* v. *Finucane,* 342 U. S. 76, that Congress acted "[w]ith a view to protecting the Government against fraud while safeguarding citizenship from abrogation except by a clearly defined procedure . . . ."  *Id.,* at 83.

The natural meaning of the language used in § 340 (a) is that filing of the affidavit is a procedural prerequisite to maintenance of the suit.   In the *Bindczyck* case, this Court held that § 338 (a) of the Nationality Act of 1940, predecessor of § 340 (a), sets forth the exclusive procedure for denaturalization.[8]   Despite that decision, the Government would have us hold now that the grant of power to maintain denaturalization suits is found in the general duty of United States Attorneys to prosecute all civil actions in which the United States is concerned,[9] and that § 340 (a) merely imposes the "additional duty . . . to act, not alone on their own knowledge and judgment, but on the basis of an affidavit of good cause furnished by private citizens."   In effect the Government argues that the affidavit is required only when the proceeding is to be brought on the complaint of a private citizen.   We need not decide whether a private citizen may ever file such a complaint.   The short answer in this case is that the Government laid its complaint expressly under § 340 (a).

While arguing that the words of § 340 are words of limitation on the discretion of the United States Attorney, the Government apparently concedes that the

---

[8] The specific holding, that § 338 (a) of the 1940 Act overrode local rules concerning time limitations upon the power of state courts to reopen their judgments, was abrogated by § 340 (j) of the Immigration and Nationality Act of 1952, 66 Stat. 163, 262.  The underlying philosophy of *Bindczyck* remains intact.

[9] 28 U. S. C. § 507 (a) (2).

venue and notice provisions of the Section are generally applicable to denaturalization proceedings. Its argument overlooks the fact that the affidavit and venue provisions are in the same sentence. If the affidavit were required only when the United States Attorney proceeded on the complaint of a private citizen, then only in such a case would the venue be restricted to the district of the defendant's residence. We could accept such a limiting construction of the statute only upon a very clear showing that Congress meant something other than what it said.

The original Act of 1906 was the culmination of many years of study by Congress and a commission of which the Attorney General was a leading spirit and his Assistant the Chairman. Shortly after its enactment, the same Attorney General rendered an opinion to the Secretary of Commerce and Labor to the effect that the filing of an affidavit was "necessary to give a United States attorney authority to institute proceedings in any court for the cancellation of a naturalization certificate."[10] In such circumstances, a contemporaneous construction of a statute by the officer charged with its enforcement is entitled to great weight. *Fawcus Machine Co.* v. *United States,* 282 U. S. 375, 378; *Norwegian Nitrogen Products Co.* v. *United States,* 288 U. S. 294, 315. Over a period of years, however, there has been some conflict among the circuits concerning the affidavit requirement.[11] The Government

[10] Letter of Attorney General Bonaparte, March 26, 1907 (unpublished, National Archives), cited in a contemporary treatise by a recognized authority on the statute. Van Dyne, Law of Naturalization (1907), 138. The letter is reproduced at p. 50 of the Brief for the United States.

[11] The Courts of Appeals for the Third, Fifth, and District of Columbia Circuits had taken the position adopted by the Second Circuit in this case. *United States* v. *Richmond,* 17 F. 2d 28; *United States* v. *Salomon,* 231 F. 928; *Cohen* v. *United States,* 38 App. D. C. 123. The Seventh and Ninth Circuits favored the contrary position. *United States* v. *Tuteur,* 215 F. 2d 415; *Schwinn* v. *United States,*

relies particularly on our affirmance of the decision of the Court of Appeals for the Ninth Circuit in *Schwinn* v. *United States,* 311 U. S. 616.   The Court decided that case on the sole ground of illegal procurement.   Although the necessity of the affidavit was considered below in view of the Government's failure to offer proof in support of its allegation that an affidavit of good cause had been furnished, the question was not presented to this Court.[12]

Prior to the decision in the *Schwinn* case the practice of the Justice Department seems generally to have been to institute denaturalization proceedings upon affidavit showing good cause.   The Government does not now contend that it has abandoned that practice.   It merely claims the right not to do so when it chooses, as clearly appears from portions of a Department of Justice memorandum which has been brought to the Court's attention.[13]

---

112 F. 2d 74, affirmed *per curiam,* 311 U. S. 616; *United States* v. *Knight,* 291 F. 129 (U. S. D. C. Mont.), affirmed 299 F. 571; *United States* v. *Leles,* 227 F. 189.

[12] On two prior occasions this Court has had occasion to notice the affidavit provision without suggesting that it was not an essential procedural step in the denaturalization proceeding.   See *Johannessen* v. *United States,* 225 U. S. 227, 242; *Schneiderman* v. *United States,* 320 U. S. 118, 159, n. 54.

[13] "As indicated below in 'IV. Pre-Trial Procedure,' the defendant can probably obtain most of the government's evidence by a proper utilization of the methods of discovery provided in Rules 16, 33, and 34.   It, therefore, may be advisable at the outset to furnish him with a reasonable amount of the government's evidence in order to reduce the chance of these discovery rules being employed, and thus avoid the ensuing delay.   If this is done, it would seem that the affidavit rather than the complaint is the proper place in which to recite evidence.

"In the event it is decided in a given case to furnish the defendant with some of the government's evidence, it is recommended that an affidavit be prepared and served with the complaint and that in the affidavit there be recited briefly the nature of the evidence to be relied upon.   This recitation of evidence should be of a general nature

We are unimpressed by the reasoning of that memorandum. We think that the public interest is not served by taking such liberties with a specific statutory requirement designed for the protection of naturalized citizens. And we fail to see that the requirement imposes a burden on the Government. At this Term, it has been represented to us that the usual practice is that, "if sufficient grounds are shown, an 'affidavit showing good cause' (see Section 340 (a) of the Act . . .) is prepared and executed, and is forwarded as an aid to the formal judicial proceedings . . . ." [14]

Lastly the Government contends, as an alternate ground for reversal, that no harm is done to the defendant because the complaint itself is verified and, therefore, accomplishes the function of the affidavit. With this we cannot agree. The complaint, under modern practice, is required merely

---

but sufficient to reduce the ordinary chance of the discovery rules being employed and at the same time to reduce the likelihood of the government having to oppose a motion for a bill of particulars. On the other hand, it should not be so complete as to provide the defendant with the names of witnesses and possibly can be so phrased as not to disclose their identity. Similarly, it may be disadvantageous to make it so complete as to identify specific instruments or writings, for this may increase the likelihood of a demand for their production under Rule 34. It would seem sufficient to set out the general substance or type of statements or writings known to have been made without quoting them. It would also seem proper to aver generally membership and leadership in the German-American Bund or other un-American organizations, refusal of military service, general propaganda activities, etc.

"If it is believed undesirable to attach an affidavit to the complaint and to serve it upon the defendant, as discussed above, in that instance no reference should be made in the complaint to an affidavit having been prepared and as constituting the basis of the action." Circular No. 3663, Dept. of Justice, Supp. No. 9, April 6, 1943 (mimeographed), p. 87, printed in a supplemental memorandum filed by the Government in this case.

[14] Brief for the United States, *United States* v. *Minker*, 350 U. S. 179 (No. 35, October Term, 1955), at p. 34.

to allege ultimate facts while the affidavit must set forth evidentiary matters showing good cause for cancellation of citizenship.[15]

In the *Bindczyck* case, *supra*, the Court summed up the purpose of and approach to denaturalization proceedings as follows:

> "[W]e cannot escape the conclusion that in its detailed provisions for revoking a naturalization because of fraud or illegal procurement not appearing on the face of the record, Congress formulated a self-contained, exclusive procedure. With a view to protecting the Government against fraud while safeguarding citizenship from abrogation except by a clearly defined procedure, Congress insisted on the detailed, explicit provisions of § 15.
>
> ". . . if citizenship was granted, it was to be proof against attacks for fraud or illegal procurement based on evidence outside the record, except through the proceedings prescribed in § 15. The congressional scheme, providing carefully for the representation of the Government's interest before the grant of citizenship and a detailed, safeguarded procedure for attacking the decree on evidence of fraud outside the record, covers the whole ground. Every national interest is thereby protected." 342 U. S., at 83, 84.

This proceeding was concededly brought under § 340 (a). We hold that this is the only Section under which a United States attorney may institute denaturalization proceedings, and that the affidavit showing good cause is a procedural prerequisite to the maintenance of proceedings thereunder.

The mere filing of a proceeding for denaturalization results in serious consequences to a defendant. Even if

---

[15] *United States* v. *Richmond,* 17 F. 2d 28; *United States* v. *Salomon,* 231 F. 928.

his citizenship is not cancelled, his reputation is tarnished and his standing in the community damaged. Congress recognized this danger and provided that a person, once admitted to American citizenship, should not be subject to legal proceedings to defend his citizenship without a preliminary showing of good cause. Such a safeguard must not be lightly regarded. We believe that, not only in some cases but in all cases, the District Attorney must, as a prerequisite to the initiation of such proceedings, file an affidavit showing good cause. The District Court below correctly dismissed the proceedings in this case because of the failure of the Government to file the required affidavit and the judgment of the Court of Appeals is therefore

*Affirmed.*

Mr. Justice Harlan took no part in the consideration or decision of this case.

Mr. Justice Clark, with whom Mr. Justice Reed and Mr. Justice Minton join, dissenting.

The Court's ruling today seriously obstructs the Government in filing denaturalization proceedings in this type of case. It reverses a long line of cases in the lower federal courts [1] and disregards a consistent administrative practice of over thirty years standing, a period which

---

[1] *Schwinn* v. *United States,* 112 F. 2d 74 (C. A. 9th Cir.), aff'd 311 U. S. 616; *United States* v. *Tuteur,* 215 F. 2d 415 (C. A. 7th Cir.); *United States* v. *Knight,* 291 F. 129 (D. C. Mont.), aff'd 299 F. 571 (C. A. 9th Cir.); *United States* v. *Collins,* 131 F. Supp. 545 (D. C. S. D. N. Y.); *United States* v. *Shinkevich,* 131 F. Supp. 547 (D. C. E. D. Pa.); *United States* v. *Jerome,* 115 F. Supp. 818 (D. C. S. D. N. Y.); *United States* v. *Lustig,* 110 F. Supp. 806 (D. C. S. D. N. Y.); *United States* v. *Schuchhardt,* 48 F. Supp. 876 (D. C. N. D. Ind.); *United States* v. *Leles,* 227 F. 189, 236 F. 784 (D. C. N. D. Calif.); *United States* v. *Radzie,* 14 F. R. D. 151 (D. C. S. D. N. Y.); *United States* v. *Favorito,* 7 F. R. D. 152 (D. C. N. D. Ohio).

includes two recodifications of the immigration laws. Furthermore, the identical point on which the case today is decided was present in two earlier cases where it apparently was not considered important enough to be presented to this Court.[2]

The only authority for the Court's action is an unpublished, informal, and somewhat ambiguous inter-departmental letter of the Attorney General written in 1907. While any Attorney General might well be proud to see his views given such lasting effect, he undoubtedly would be surprised to learn that the authority of such an informal statement could overrule later court decisions and a thirty-year, firmly established position of the Department of Justice. Many cases witness the fact that the Court has often given little or no weight to carefully drawn opinions of the Attorney General on questions of statutory interpretation.

But my major objection to the decision today is the extreme burden placed on the Government in cases such as this. The Court construes § 340 (a) of the Immigration and Nationality Act to require something more than was filed in the present case. The complaint here was verified; the Assistant United States Attorney swore that the facts alleged in the complaint were "true" and "that the sources of his information . . . are the records which are on file in his office." Thus the complaint in this case was supported by the jurat of a notary public

---

[2] In *Schwinn* v. *United States*, 112 F. 2d 74, the Ninth Circuit held that the filing of the affidavit was not "jurisdictional," and passed on the merits. We granted certiorari and affirmed summarily "on the sole ground" that the certificate had been illegally procured. 311 U. S. 616. In *Schneiderman* v. *United States*, 320 U. S. 118, we considered the merits at length, even though the "affidavit" filed in that case by the Immigration Inspector revealed that his information was based, as here, solely on the Government's files, and was in exactly the form used here.

and the sworn statement of an Assistant United States Attorney who held office by virtue of his oath to carry out his official duties fairly and impartially. No more was present in *Schneiderman* v. *United States*, 320 U. S. 118.

The complaint alleged that Zucca had lied in his alien registration statement in 1940, and in his preliminary naturalization examination and testimony before a naturalization examiner in 1952. He is alleged to have stated under oath that "he did not belong to and was not associated with any organization which teaches or advocates the overthrow of existing government." The complaint then alleges that Zucca "was a member of the Communist Party of the United States, including the Workers Communist Party . . . from 1925 to 1947." Under § 305 of the Nationality Act of 1940, the complaint continues, Zucca's naturalization was illegal.

But the majority declares that these sworn allegations are insufficient. It makes a vague reference to the pleading of "ultimate facts while the affidavit must set forth evidentiary matters showing good cause for cancellation of citizenship." From this statement I can draw only one conclusion. As respondent contends, "good cause" means "that the Government must furnish the Court with sworn statements by persons having personal knowledge of the facts . . . Congress could not have intended that the courts be required to accept the second-hand statements of investigators . . . ." [3] Apparently neither the United States Attorney nor anyone in the Immigration Service or the FBI can make such an affidavit unless he has personal knowledge of the facts. This would limit verification by these officers to cases based on prior undis-

---

[3] The trial judge held "that before a United States Attorney may institute a denaturalization proceeding he must be furnished with an affidavit of good cause."

closed criminal convictions, arrival age where controlling, etc.

But in proceedings based solely on membership in the Communist Party substantially different conditions prevail. Invariably, membership can be proved only from the testimony of other members concerning attendance at meetings, payment of dues, etc. There are no membership cards in the Party and have been none for more than a decade. If these evidential methods of proof—the testimony and identity of undercover agents—must be disclosed in an affidavit, the Government must choose between foregoing denaturalization cases and drying up its source of information before the proceeding can be brought. It is common knowledge among law enforcement officers that witnesses are affidavit-shy, particularly in cases involving subversion. Often, testimony can be obtained only in court with the aid of compulsory process. The difficulties in requiring exposure by affidavit are overwhelming and decisive in cases of this type.

I do not believe Congress ever intended such a rule. To me § 340 (a) is clear and unambiguous. Its plain reading is that proceedings may be filed by the United States Attorney "upon affidavit showing good cause therefor." Here the Attorney swore to specific charges which certainly do constitute "good cause." The sworn statement that petitioner was a member of the Communist Party and the Workers Communist Party from 1925 to 1947 alleges a prima facie case. To me it seems obvious that the purpose of § 340 (a)—to reduce the possibility of spurious denaturalization proceedings—is fully served by such a sworn statement.

Nor did the Congress intend that there should be two trials of issues of fact in these cases. To require the filing of evidential affidavits implies, as Zucca contends, extensive testing of their sufficiency before trial. The defendant is thus given two chances at the Government's case.

There is no comparable requirement for an indictment in a criminal prosecution, *Costello* v. *United States*, 350 U. S. 359. But denaturalization is only a civil proceeding to withdraw a privilege wrongfully obtained. There has always been the requirement of proof under cross-examination of charges against the naturalized citizen, but apparently in this case the Court authorizes an additional procedure. Before his trial in this denaturalization proceeding, Zucca may file a bill of particulars and take depositions of each witness signing a "good cause" affidavit. The scope and reliability of the affidavits are then made the subject of judicial inquiry.[4] If the Government proves its case at this stage, it may then go to trial, where the same evidence is considered again. To my way of thinking, this clearly frustrates an important congressional program, a part of the broader one designed to protect our country from Communist infiltration.

In my opinion § 340 (a) requires the United States Attorney to allege in a sworn complaint sufficient factual information to show a prima facie case for denaturalization. At most it should be sufficient for an officer of the Immigration and Naturalization Service familiar with the case to make such allegations under oath. If the Court would require this paper to be headed "Affidavit" and contained in a separate blue backing, I would have no objection, though I see nothing to be gained from such a technical labeling. But as I read the Court's decision today it goes much further than this, and it may well submerge the denaturalization procedure established by Congress in a morass of unintended procedural difficulties.

---

[4] The trial judge held, "But, the protection afforded by the requirement of an affidavit of good cause would be seriously impaired if the defendant in a denaturalization action could not examine it and test its sufficiency by motion before trial."