**Joan G. LYNAM, Plaintiff,**

v.

**Julius LIVINGSTON and Livingston Oil Company, a Delaware corporation, Defendants.**

**Civ. A. No. 3062.**

United States District Court
D. Delaware.

Aug. 11, 1966.

William T. Lynam, III, Wilson & Lynam, Wilmington, Del., for plaintiff.

H. James Conaway, Jr., and Edward B. Maxwell, 2nd, Young, Conaway, Stargatt & Taylor, Wilmington, Del., for defendant Julius Livingston.

Louis Finger, Richards, Layton & Finger, Wilmington, Del., for defendant Livingston Oil Co.

## OPINION

STEEL, District Judge.

The question for determination is whether plaintiff's motion to further "amend"[1] her amended complaint (hereinafter "complaint") to allege a "new cause of action"[1] should be granted over the objection of both the corporate defendant Livingston Oil Company (hereinafter "Oil Company") and Julius Livingston, the individual defendant. To put this question in proper focus requires a recitation of certain prior proceedings in the case.

The complaint was filed on July 27, 1965. It alleges that plaintiff is and since August 13, 1964 has been the owner of common stock of the Oil Company and that Livingston is its president and director. Neither the residence nor citizenship of plaintiff is alleged, but for purposes of the present motion she will be deemed to be a resident and citizen of Delaware.[2] The Oil Company is alleged to be a Delaware corporation, Livingston, a non-resident of Delaware, and the amount in controversy to exceed $10,000, exclusive of interest and costs. Jurisdiction was acquired over Livingston's property by sequestration pursuant to Delaware law and Rule 4(e).

The complaint contains two counts denominated Claims I and II. Claim I is based upon § 16(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78p(b) whereunder plaintiff seeks to recover for the Oil Company an alleged profit made by Livingston as a result of the purchase and sale within six months of Oil Company stock. Jurisdiction is based upon § 27 of the Act, 15 U.S.C. § 78aa.

Claim II purports to be brought derivatively on behalf of Oil Company, and to allege a common law cause of action based upon a breach of fiduciary duty by Livingston in selling stock of Oil Company with inside information that a decline in earnings would be shown in its next published earning report. The sale involved in Claim II is the same as that alleged in Claim I.

On August 10, 1965 Livingston entered a general appearance and thereby obtained a release of his sequestered property.

On September 10, 1965 Livingston moved to dismiss Claim II because of its failure to contain any allegation which even attempted to comply with Rule 23 (b). Before the motion was acted upon, an order was entered on September 13, 1965 by Wright, C. J. which granted plaintiff leave to file an amendment to Claim II. The amendment consisted of paragraph 27 which alleged that (1) it would have been futile for plaintiff to have demanded that the Board of Directors of Oil Company bring the action since a majority of the directors were controlled by Livingston, and (2) the rejection by the directors of plaintiff's request to enforce Claim I by suit (alleged in the original complaint) was tantamount to a refusal to enforce Claim II.

On October 8, 1965 Livingston moved to dismiss the complaint, as amended, upon the ground, among others, that plaintiff failed to plead with particularity her efforts to induce corporate action or why it was not taken pursuant to her request. Before this motion was acted upon, plaintiff, on February 25, 1966, again moved to amend Claim II by adding paragraphs 28 and 29. These paragraphs alleged that on September 17, 1965 plaintiff made a demand upon the directors to prosecute Claim II, and that on February 9, 1966 the Board of Directors refused to do so. The allegations of paragraphs 28 and 29 were stated to be "alternative" to the futility of demand allegations of paragraph 27.

---

1. Plaintiff's characterization.

2. Plaintiff is the wife, so it has been stated, of the Delaware attorney who represents her. Throughout the proceedings thus far all parties have considered that she is a citizen of Delaware. If this is the fact, it should be alleged in an amendment which it is hoped the parties will stipulate to.

On April 22, 1966 an order was entered which denied plaintiff's motion for leave to amend (actually to supplement) the complaint and dismissed Claim II, without prejudice, for failure to comply with Rule 23(b). This was for two reasons. The first was that the refusal of the directors to enforce Claim I was not deemed to be tantamount to a refusal to prosecute Claim II. The second reason was because the Court was of the view that since a condition precedent to plaintiff's right to sue (demand and refusal of the directors to prosecute Claim II)[3] had not occurred before suit was begun, the deficiency could not be cured by events which post-dated the bringing of the action (Oral Opinion April 1, 1966). This latter conclusion was induced in part by the decision in United States for Use of Atkins v. Reiten, 191 F.Supp. 864 (D.Alaska 1961) to which defendant's attorney directed the Court's attention at the argument, unaware of the fact that the decision had been previously reversed in United States for Use of Atkins v. Reiten, 313 F.2d 673 (9th Cir. 1963).

On April 25, 1966, plaintiff filed her present motion seeking leave to file an "amended" complaint alleging a "new cause of action." Except in form this amendment is no different than the amendment denied by the order of April 22, 1966. Once again Livingston moved to dismiss. Despite the Court's earlier order of April 22, 1966, the Court determined to reconsider the matter.

The "amended complaint" which plaintiff seeks to file purports to supercede in its entirety Claim II as previously amended. In reality, it is simply a reiteration of Claim II, as amended pursuant to the order of September 13, 1965, plus allegations concerning the demand which plaintiff made upon the Oil Company to sue and its refusal to do so.

Since the demand and refusal took place after the action was begun, the motion is one to supplement the complaint under Rule 15(d), even though plaintiff labels it a motion to amend under Rule 15(a). United States v. L. D. Caulk Co., 114 F.Supp. 939, 940 (D.Del. 1953). This erroneous characterization is immaterial. United States for Use of Atkins v. Reiten, 313 F.2d 673, 674 (9th Cir. 1963). See Security Insurance Co. of New Haven, Conn. v. United States, 338 F.2d 444, 449 (9th Cir. 1964) where the Court held that the result would be the same regardless of whether the pleading was considered as an amendment to the complaint or a supplemental complaint.

Rule 15(d) reads:

"Upon motion of a party the court may, upon reasonable notice and upon such terms as are just, permit him to serve a supplemental pleading setting forth transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented. *Permission may be granted even though the original pleading is defective in its statement of a claim for relief or defense.* If the court deems it advisable that the adverse party plead to the supplemental pleading, it shall so order, specifying the time therefor." (Italics supplied.)

The italicized words were inserted by the 1963 amendment. On their face they would appear to authorize the Court, in its discretion, to supplement Claim II with the allegations concerning plaintiff's demand and the directors' refusal to sue even though they took place after suit was begun.

Defendant argues, however, that plaintiff's proposed supplemental pleading alleges a new cause of action based in part upon facts occurring after her original complaint was filed, and that Rule 15(d) was not intended to permit such a cause

---

**3.** Apparently the allegation of futility of demand because of director control was overlooked and was not acted upon by the Court. Now, by letter dated August 3, 1966, plaintiff asserts that the allegation "is no longer in the case."

of action to be pleaded. No such limitation is to be found in Rule 15(d) and no decision has been brought to the Court's attention which so construes the Rule. But assuming that defendant's interpretation of the Rule is valid, still it would have no bearing upon the instant case.

There is a well recognized distinction between a cause of action and a right of action. A cause of action is a legal wrong—the thing which becomes a ground for suit. A right of action, on the other hand, is a right presently to enforce a cause of action by suit. Mc-Mahon v. United States, 186 F.2d 227, 230 (3d Cir. 1950), aff'd 342 U.S. 25, 72 S.Ct. 17, 96 L.Ed. 26 (1951).

■■ In the case of a stockholder's derivative suit, the cause of action does not belong to the stockholder; it belongs to the corporation. The wrong which the suit seeks to redress is one which the corporation has sustained. 13 Fletcher Cyclopedia Corporation (Perm.Ed.), Vol. 13, § 5908, p. 361; see also Koster v. (American) Lumbermens Mutual Casualty Co., 330 U.S. 518, 522, 67 S.Ct. 828, 91 L.Ed. 1067 (1946). When a stockholder's derivative action is dismissed because of the failure of a stockholder to comply with Rule 23(b), it is not because the corporation has no cause of action but because the stockholder lacks the standing to assert the cause of action on its behalf. Compare Venner v. Great Northern Ry. Co., 209 U.S. 24, 34, 25 S. Ct. 328, 52 L.Ed. 666 (1908) which arose under old Equity Rule 94, the forerunner of Rule 23(b).

■ Thus it will be seen that from the time when plaintiff first filed her complaint, a common law cause of action was alleged on behalf of the Oil Company against Livingston based upon the charge that the latter had violated the fiduciary duty which he owed to the corporation by utilizing inside information to benefit himself. Under these circumstances, the fact that plaintiff was without standing to sue when suit was begun cannot deprive her of the right to allege in a supplemental complaint that after suit was instituted she complied with all conditions required to give her a right to sue. Analogous cases, some of which even antedated the 1963 amendment to Rule 15(d), support this view.

In United States for Use of Atkins v. Reiten, supra, plaintiff, who had not been paid for material and equipment furnished on a Government contract, brought suit on the payment bond under the Miller Act, 40 U.S.C. § 270a et seq. Section 270b(a) authorized such a suit where payment had not been made before the expiration of the period of ninety days after the date of last delivery of material. Plaintiff's suit was begun before the ninety day period had expired. Later, plaintiff filed an "amended" complaint alleging that the ninety days period had passed and that he was still unpaid. The District Court dismissed the action stating that the passage of ninety days time from the date of last delivery was a "condition precedent" to the commencement of a suit (191 F.Supp. p. 866), and that plaintiff's

" * * * right to recovery against the surety depended upon its right at the inception of this suit and that the non-existence of a cause of action when the suit was started is a fatal defect which cannot be cured by the accrual of a cause of action pending suit." (p. 867.)

This decision was reversed in United States for Use of Atkins v. Reiten, supra even though the Court construed the supplemental pleading as introducing "a cause of action not alleged in the original complaint and not in existence when the original complaint was filed." (313 F.2d p. 674.) The Court noted that the statute of limitations had not run when the supplemental pleading was filed. (p. 675.)

In Security Insurance Co. of New Haven, Conn. v. United States, supra, the Court, relying in part upon the 1963 amendment to Rule 15(d), followed the rule announced in *Reiten*. It did this

despite the fact that when the supplemental complaint was filed the statute of limitations against the enforcement of the claim had run.

In Missouri, Kansas & Texas Ry. Co. v. Wulf, 226 U.S. 570, 33 S.Ct. 135, 57 L.Ed. 355 (1912) plaintiff, as the sole beneficiary of her deceased son, brought an action in her individual capacity under the Federal Employers' Liability Act of 1908 charging that the negligence of the defendant had resulted in the death of her son while he was in defendant's employ. Later, after the statute of limitations had run, plaintiff was appointed administratrix of her son's estate and the complaint was amended to allege that fact. Defendant objected to the amendment upon the ground that under the Federal Employers' Liability Act only the personal representative of the decedent had the right to sue and that no amendment permitting plaintiff to sue in that capacity should be allowed after the cause of action was barred by the statute of limitations. A judgment in plaintiff's favor was appealed and the objection to the amendment was reiterated. In affirming the judgment, the Supreme Court acknowledged that under the Employers' Liability Act the plaintiff had no standing to sue in an individual capacity but could only do so in her capacity as personal representative. The Court held, however, that since the amendment merely indicated the capacity in which the plaintiff was to prosecute the action without in any way modifying or enlarging the facts upon which the action was based, the amendment was clearly authorized by Rev.Stat. § 954 et seq.[4] The Court stated that the amendment was not the equivalent to the commencement of a new action, and hence was not barred by the statute of limitations.

■■ Taken together, the three decisions last cited support the conclusion that when a cause of action exists at the time when the original complaint is filed, but at that time a plaintiff lacks standing to enforce it, a Court has the power to permit the plaintiff to file a supplemental pleading to establish his right to sue, by reasons of facts occurring after the suit was begun.[5] This interpretation of Rule 15(d) is not only consonant with its language, but also is in conformity with the general principle of interpretation prescribed by Rule 1 which mandates that the rules be construed so as to secure the just, speedy and inexpensive determination of every action.

Defendant argues that if plaintiff were to institute a new action this Court would not have subject matter jurisdiction because of an absence of diversity of citizenship. Hence, defendant argues that it is inequitable to permit plaintiff to file a supplemental complaint which will put her in a position to assert that the Court has pendant jurisdiction over Claim II because it is joined with the federal cause of action alleged in Claim I. A similar argument was made and rejected in Otis Elevator Co. v. 570 Building Corp., 35 F.Supp. 348 (E.D. N.Y.1940).

United States v. Fisher, 258 F.2d 362 (7th Cir. 1958) relied upon by defendant, and Matles v. United States, 356 U.S. 256, 78 S.Ct. 712, 2 L.Ed.2d 741 (1958) which affirmed the *Fisher* principle, both hold that 8 U.S.C. (Supp. II) § 1451 (a) requires that a petition to revoke an order admitting a person to citizenship must be accompanied by an affidavit showing good cause for the revocation, and that when such an affidavit is not filed with the petition the infirmity cannot be cured by a later filing of an affi-

---

4. Rev.Stat. § 954 et seq. provided that a District Court "may at any time permit either of the parties to amend any defect in the process or pleadings, upon such conditions as it shall, in its discretion and by its rules, prescribe."

5. This may be done, at least one Court has held, United States for Use of Atkins v. Reiten, *supra*, even though the supplemental pleading is construed to embody a new cause of action.

davit of good cause to supplement the petition.[6] In *Matles,* the Court said that an affidavit showing good cause is "a prerequisite to the initiation of denaturalization proceedings." (p. 257, 78 S.Ct. 712). Both *Fisher* and *Matles* were decided without reference to Rule 15(d) and both antedated the 1963 amendment to that rule. They are, therefore, inapposite.[7]

Townsend Corp. of America v. Davidson, 40 Del.Ch. 295, 181 A.2d 219 (1962) holds that when a non-resident has appeared generally in a quasi *in rem* proceeding to defend one cause of action, it would be a fraud upon him to permit an amendment which asserts a completely new cause of action against him. Livingston erroneously relies upon this principle in urging the dismissal of Claim II. The cause of action alleged in Claim II was asserted against Livingston from the beginning. When, on August 10, 1965, he appeared generally, he did so to respond to both Claims I and II. The supplemental complaint adds nothing to the Claim II cause of action which was not asserted initially.

The motion of plaintiff "to amend the complaint" (actually to supplement the complaint) will be granted. In so ruling, the Court is not passing upon the question whether Claim II states a good cause of action or whether the Court has pendant jurisdiction of that claim.

6. 8 U.S.C. (Supp. II) § 1451(a) reads in part:
   "It shall be the duty of the United States attorneys for the respective districts, upon affidavit showing good cause therefor, to institute proceedings * * * for the purpose of revoking and setting aside the order admitting such person to citizenship and cancelling the certificate of naturalization on the ground that such order and certificate of naturalization were illegally procured * * *," etc.

7. The reason underlying the decisions was foretold by United States v. Zucca, 351 U.S. 91, 99–100, 76 S.Ct. 671, 100 L.Ed.

964 (1956). There it was pointed out that a proceeding for denaturalization involves serious consequences to defendant, and that even if his citizenship is not cancelled his reputation is tarnished and his standing in the community is damaged. It was in recognition of this danger that *Zucca* construed § 1451(a) to prohibit exposing a naturalized citizen to the burden of defending his citizenship unless a preliminary showing of good cause was made. Wholly apart from Rule 15(d), the lofty considerations involved in safeguarding the right of a naturalized citizen from unwarranted charges of deportability find no parallel in the policy underlying Rule 23(b).