**UNITED STATES of America,**
**Plaintiff,**

v.

**CHARTERED BUS SERVICE, INC.,**
**Defendant.**

**Civ. A. No. 151–71–N.**

United States District Court,
E. D. Virginia,
Norfolk Division.

July 9, 1971.

Brian P. Gettings, U. S. Atty., Norfolk, Va., Arthur F. Bronczyk, Regional Counsel, Interstate Commerce Commission, Philadelphia, Pa., for plaintiff.

Ronald H. Marks, White, Katherman, Daniels & Marks, Norfolk, Va., John M. Cleary, Donelan, Cleary & Caldwell, Washington, D. C., for defendant.

## MEMORANDUM OPINION

KELLAM, District Judge.

This civil forfeiture proceeding brought by the United States under provisions of 28 U.S.C. § 1345 and § 222(h) of the Interstate Commerce Act (the Act), 49 U.S.C. § 322(h), in five counts,

charges the defendant, Chartered Bus Service, Inc. (Chartered) of Norfolk, Virginia, with failing and refusing to comply with Section 203(c)[1] of the Act. There being no factual dispute between the parties, the matter is submitted on the pleadings. Each party moved for summary judgment. In its answer, Chartered admits that the Interstate Commerce Commission (the Commission) has not issued a certificate or a permit to it as provided for in § 203(c) of the Act. Chartered further admits that it transported college students attending Norfolk State College from Norfolk, Virginia to (1) Springfield, Massachusetts on or about December 1, 1969, (2) Durham, North Carolina on or about December 5, 1969, (3) Dover, Delaware on or about January 9, 1970, (4) Baltimore, Maryland on or about January 12, 1970, and (5) Princess Anne, Maryland on or about January 19, 1970, on public highways, and then returned to Norfolk, Virginia, for compensation in the aggregate amount of $1708.10. As to each of the five counts of the complaint, however, Chartered contends "this transportation was performed without there having to be any authorization issued by the Interstate Commerce Commission since the operation was performed pursuant to the exemption set forth in § 203(b) (1) of the Interstate Commerce Act (49 U.S.C. § 303(b) (1))."

Section 203(b) (1) of the Act provides:

*Vehicles excepted from operation of law*

(b) Nothing in this chapter, except the provisions of section 304 of this title relative to qualifications and maximum hours of service of employees and safety of operation or standards of equipment shall be construed to include (1) motor vehicles employed solely in transporting school children and teachers to or from school; * * *

The real issue for this Court's consideration is the statutory construction of the term "school children," and whether or not this term was intended by Congress to include persons attending colleges or universities. Research into the legislative history of the Act and its subsequent amendments provides no satisfactory clue to Congress' intent. Moreover, research into the judicial interpretations of § 203(b), while replete with judicial constructions of the agricultural exemption, 49 U.S.C. § 303(b) (6), reveals no prior statutory construction of the "school children" term at the district or appellate court level.

One unreported criminal case, United States of America v. Twin City Coach Company, Inc., Cr. 13,329 (E.D.Va.1967) would seem to indicate that college and university students do not fall within the "school children" exemption of § 203(b) (1). There, Twin City pleaded guilty to counts, 1, 2, 3 and 4 of a ten-count indictment, counts 2 through 10 inclusive of which involved the transporting of the students of Frederick College in Portsmouth, Virginia, in interstate commerce for compensation where the Commission had not issued any certificate or permit as required by § 203 (c). On defendant's plea of guilty and the evidence heard, Chief Judge Hoffman fined defendant a total of $400.00.

*Twin City,* being a criminal case and with no contention raised by the defendant as to the applicability of the "school children" exemption, differs decidedly from the present civil action where the contention is raised before this Court.

---

1. Section 203(c) of the Act, in pertinent part, provides—
Except as provided in section 302(c) of this title, subsection (b) of this section, in the exception in subsection (a) (14) of this section, and the second proviso in section 306(a) (1) of this title, no person shall engage in any for-hire transportation business by motor vehicle, in interstate or foreign commerce, on any public highway or within any reservation under the exclusive jurisdiction of the United States, unless there is in force with respect to such person a certificate or a permit issued by the Commission authorizing such transportation.

A case decided by the Commission on October 1, 1969, Fox River Bus Lines, Inc., Investigation of Operations, 110 M.C. 423, did deal with the construction of this term. There the Commission unequivocally ruled that "[i]n our view, college students are not school children within the meaning of the statute." Id. at 428. Continuing, the Commission wrote:

In many instances, perhaps in most, college students have not yet reached their majority, the age of 21 when by law they become adults. By the same token, however, many college students are often considerably older. We do not believe that Congress had in mind such persons when it elected to use the phrase "school children." If it intended college students to be embraced by the exemption, it could easily have chosen to use the term "students." The fact that Congress chose to employ the more limited phrase indicates that it did not intend the exemption to apply to college students. Our Bureau of Operations (and before it, the Bureau of Motor Carriers) has in fact for years informally interpreted the phrase "school children" as meaning students up to and including high school students. We consider this the sound view, and the one most in keeping with the evident intent of Congress. *Id.* at 428. (footnotes omitted)

The Commission's order in *Fox River* has since become final, as the three-judge court convened to hear Fox River Bus Lines, Inc. v. United States, Interstate Commerce Commission, No. 68–C–390, in the Eastern District of Wisconsin, issued an order on September 8, 1970, dismissing the action for lack of prosecution.

*Fox River*, moreover, is consistent with the Commission's earlier opinion in Ernest Keller, Common Carrier Application, 94 M.C. 238 (1963), where an interstate carrier of some 813 pre-college age school children in Waldorf and Hughesville, Maryland, was said to come within the § 203(b) (1) exemption.

There, Keller had transported certain of these children to Washington, D. C. for educational excursions at the expense of the County School Board. In commenting on the language of the statute, the Commission wrote:

[W]hen the word "school" is used in the sense of a school building, it is almost invariably accompanied by an article or a descriptive proper name: "a school," "the school," "Central School," or "Public School Number 1." The word "school" in the abstract is much more likely to mean something quite different. Were one to say "School is in session," for example, he would be referring not to a building but to a body of students and teachers; were he to say "School begins in September," he would mean a period or session of teaching; and should he say "That person never finished school," he would be referring to the process of formal education itself. *Id.* at 240.

At no point in this discussion did the Commission imply that it regarded the "school children" exemption to include any level above high school. Its two examples, its use of the word "teacher" in lieu of "professor," its allusion to a single building rather than a grouping of buildings, and finally its allusion to school as formal education (and certainly college education has not reached this plateau yet) all point to the fact, spelled out explicitly six years later, that the Commission thinks of "school children" as not including college students.

*Fox River* is also consistent with the subsequent rule-making proceeding—which it was instrumental in bringing about—entitled Ex Parte No. MC–78, Vehicles Employed Solely in Transporting School Children and Teachers, 113 M.C. 258, served May 12, 1971 (seven weeks before the complaint was filed in this case). Apparently feeling that *Fox River* was dispositive of the issue of exclusion of college students from the § 203(b) (1) exemption, the Commission said only: "(footnote 6) Chartered's assertion that the schoolbus exemption

should extend to vehicles used in furthering adult education is inconsistent with the *Fox River* decision and will not be further considered." *Id.* at 274; and "(footnote 15) Although the term 'children' has been interpreted as meaning only students up to and including high school students, a strict construction of the term might well have required that it include only elementary school children." *Id.* at 280.

We are not unmindful of the opinion of Joint Board No. 5[2] in Dorsey Bus Company, Inc., Investigation and Operations and Practices, served March 23, 1970.[3] Nor are we unmindful of the manner in which counsel for Chartered has tried to demonstrate that inclusion of college students within this exemption would be beneficial in some regard toward a broad national transportation policy.

■ It is not for this Court to determine broad national transportation policies. The "construction of a statute by those charged with its execution should be followed unless there are compelling indications that it is wrong." Red Lion Broadcasting Co. v. F.C.C., 395 U.S. 367, 381, 89 S.Ct. 1794, 1802, 23 L.Ed.2d 371. "The interpretation expressly placed on a statute by those charged with its administration must be given weight by courts faced with the task of construing the statute." Zemel v. Rusk, 381 U.S. 1, 11, 85 S.Ct. 1271, 1278, 14 L.Ed.2d 179 (1964). *See* also, Udall v. Tallman, 380 U.S. 1, 16–18, 85 S.Ct. 792, 13 L.Ed.2d 616. The contemporaneous construction placed by the Commission upon the provisions of the Act are entitled to great weight and respect and should not be overturned unless they are arbitrary or plainly erroneous. Munitions Carriers Conf. Inc. v. American Farm Lines, 415 F.2d 747, 749 (10th Cir. 1969). *See also,* Leary v. United States, 395 U.S. 6, 25, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969); United States v. Zucca, 351 U.S. 91, 96, 76

S.Ct. 671, 100 L.Ed. 964 (1955); East Texas Motor Freight Lines v. Frozen Food Exp., 351 U.S. 49, 54, 76 S.Ct. 574, 100 L.Ed. 917 (1955); United States v. American Trucking Ass'ns., 310 U.S. 534, 549, 60 S.Ct. 1059, 84 L.Ed. 1345; New York, N. H., & Hartford RR. Co. v. Interstate Commerce Commission, 200 U.S. 361, 402, 26 S.Ct. 272, 50 L.Ed. 515 (1905); Griggs v. Duke Power Co., 420 F.2d 1225, 1234 (4th Cir. 1970), reversed on other grounds 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971); Brooks Transportation Co. v. United States, 93 F.Supp. 517 (E.D.Va.1950) (Dobie, J.) aff'd. 340 U.S. 925, 71 S. Ct. 501, 95 L.Ed. 668 (1950); Jno. McCall Coal Co. v. United States, 374 F.2d 689 (4th Cir. 1967); Mitchell v. C. I. R., 300 F.2d 533 (4th Cir. 1962); Interstate Commerce Commission v. Dunn, 166 F. 2d 116 (5th Cir. 1948); Bailey v. Holland, 126 F.2d 317 (4th Cir. 1942); Southern Ry. Co. v. United States, 306 F.Supp. 108 (E.D.Va.1969) (Bryan, J., sitting with MacKenzie and Merhige); Triangle Improvement Council v. Ritchie, 314 F.Supp. 20 (S.D.W.Va.1969) (Field, J.), aff'd. 429 F.2d 423 (4th Cir. 1969), cert. dismissed as improvidently granted, 402 U.S. 497, 91 S.Ct. 1650, 29 L.Ed.2d 61 (1971).

But, what we might think the law should be, and what it is, are different. This question was answered by Judge Lewis, writing for the Fourth Circuit in McCall Coal Co., *supra*, where he said:

We are without authority to overturn an administrative interpretation of an act or regulation adopted thereunder unless it can be said that the construction of the act is "plainly erroneous or inconsistent with the regulation." Bowles v. Seminole Rock & Sand Co., 325 U.S. 410, 414, 65 S.Ct. 1215, 1217, 89 L.Ed. 1700 (1945). Even though our views with regard to interpretation differ from those of the admin-

---

2. Which order is now pending before the Interstate Commerce Commission (Defendant's brief, p. 11).

3. There are 426 joint boards in the United States whose duty it is to recommend action in cases which come before them to the Commission.

istrative agency we would not be authorized to substitute our views if it could be said that the administrative interpretation was a reasonable one. Udall v. Tallman, 380 U.S. 1, 4, 85 S. Ct. 792, 13 L.Ed.2d 616 (1965).

The construction of the statute by the Commission being clear, and not arbitrary nor plainly erroneous, the Commission's motion for summary judgment is granted, and Chartered's motion for summary judgment is denied and dismissed.

Counsel for the Commission shall submit an appropriate order for judgment in this case within fifteen days.