DAVIS, Circuit Judge,
dissenting.
To me (1) the wording of Section 510(d), 46 U.S.C. § 1160(d), on its face confines the Government to the three factors specified in that provision; (2) the only pertinent legislative history of the original 1939 amendment confirms that interpretation; (3) Congress never ratified the Government’s later “lay-up” practice as now upheld by the court; and (4) the Government’s practice cannot prevail over the language and history of the statute, nor need special deference be given that administrative practice which has not been uniform.
1. The preferred and normal meaning of the language of Section 510(d) is that in determining the fair and reasonable value of the obsolete vessel the Secretary “shall consider” only the specified factors. This reading may possibly not be the only one— it may be that the bare language can conceivably be read to include consideration of other factors—but I view the Claims Court’s interpretation as preferable because the language seems mandatory, there is no hint of any other factor in it or any other part of the Act, no reference in this section (the provision specifically dealing with the trade-in allowance) to the Secretary’s having general discretion, and (as I shall point out) no suggestion in the legislative history as to consideration of other factors—rather, quite the opposite. The fact that the Secretary has discretion whether to engage in a trade-in does not at all mean that he also had discretion as to the factors to consider in making the allowance, especially when the relevant provision explicitly lists the factors to be considered.
2. When Section 510 was added in 1939, the Chairman of the Maritime Commission explicitly said the following in presenting this trade-in amendment to Congress:
The allowance suggested by the Commission and stated in the bill would be the fair and reasonable value of the old vessel, as determined by the Commission after consideration of the following factors: (1) The scrap value of the obsolete vessel both in American and in foreign markets; (2) the depreciated value based on a 20-year life; and (3) the market value thereof for operation in the world trade, or in the foreign or domestic trade of the United States.
The Commission, after consideration of the age of the vessel, its physical condi *1583 tion, and world and United States market conditions, would assign whichever value it found to be most appropriate to the circumstances, limited however to the categories specified in the bill (emphasis added).
Merchant Marine Bill, 1939, Hearings Before the House Comm, on Merchant Marine and Fisheries in H.R. 5130 (Part II), 76th Cong., 1st Sess. 1939, at 2. In answer to various proposed modifications proffered by shipping interests, the Commission urged:
The three items for consideration set out in the bill give the Commission a sufficiently wide range of discretionary power in arriving at the value of a vessel, and it is believed that a just and reasonable approximation of the real value can be fixed thereunder.
* * * * * 3)5
The Commission, in framing the turn-in suggestion has been most careful to incorporate therein only those considerations which may be considered to arise by reason of the restriction of section 9 of the Shipping Act, 1916, as amended. The Commission hopes the proposal will remain on that basis.
Id. at 182-83. Section 510(d) was adopted by Congress as drafted, proposed and explained by the Maritime Commission. Such contemporaneous construction by the proposers and administrators of the measure is most significant. United States v. Vogel Fertilizer Co., 455 U.S. 16, 31, 102 S.Ct. 821, 830, 70 L.Ed.2d 792 (1982); Zuber v. Allen, 396 U.S. 168, 192, 90 S.Ct. 314, 327, 24 L.Ed.2d 345 (1969); United States v. Zucca, 351 U.S. 91, 96, 76 S.Ct. 671, 674, 100 L.Ed. 964 (1956).
3. Congress never ratified the Maritime Administration’s later interpretation of Section 510(d) as authorizing imposition of “lay-up” costs. In 1965 the Administration did briefly explain the then “lay-up” policy at a committee hearing to consider (among other things) problems dealing with “layup” costs, but the committee report contented itself with saying that that matter was not “germane to this bill” and the committee “did not feel that legislation was the proper way to correct” the problems discussed by the Committee of American Steamship Lines representatives, but that the committee hoped the Administration would consider the complaints against the “lay-up” policy so that “errors or unfairly burdensome requirements will not occur in the future.” H.R.Rep. No. 597, 89th Cong., 1st Sess. 4 (1965), U.S.Code Cong. & Admin.News, 1965, p. 3564. This may not have been an outright rejection of the “layup” policy, but it was certainly not a ratification of it. There was also a summary reference to the “lay-up” policy at the 1970 hearings, but no committee report ever referred to that subject. Both these bits of alleged “history” reflect precisely the kind of Congressional inaction and silence that normally is entitled to no weight in construing a statute. See, e.g., Advanced Micro Devices v. C.A.B., 742 F.2d 1520, 1541 (D.C.Cir.1984).[1]
4. No deference should be accorded the Government’s “lay-up” policy both because (a) that policy is contradicted by the text of Section 510(d) and its legislative history when it was enacted, as well as thereafter, and (b) the Maritime Administration’s policy has not been long continued or uniform. I point out in paragraph 1, supra, that the Chairman of the Maritime Commission made it clear at the time of enactment that Section 510(d) mandated use of only the specified factors. It is not known when the policy applied in 1979 (to appellee) was adopted but I assume that that policy began in 1960 and continued until 1979; in January 1980, however, the policy was changed so that “lay-up” costs were to be borne by the Government. That is the type of oscillating administrative interpretation of a statute which is not owed special deference as against other dominating guidelines for statutory interpretation. .
*1584 The result for me is that this is a case in which statutory language combines with the legislative history to sustain the Claims Court’s understanding of Section 510(d). See Texas State Comm’n for the Blind v. United States, 796 F.2d 400, 415-16 (Fed.Cir.1986) (separate opinion of Davis, J.). I would therefore affirm on the Government’s appeal.[2]

. It is also noteworthy that in 1965 and 1970 "lay-up" costs were very much less than those imposed on appellee in this case.

. Because of my views on the Government’s appeal, I need not reach the issues of whether (1) the Government unlawfully failed to disclose to appellee the change in “lay-up” policy, or (2) the Government unlawfully discriminated between contractors. Because of the court’s disposition of the appeal, I do not reach American President Lines’ cross-appeal as to interest.