UNITED STATES of America,
Plaintiff-Appellant,

v.

INTERNATIONAL UNION OF OPERAT-
ING ENGINEERS, LOCAL 701, and
Russell E. Joy, Defendants-Appellees.

No. 77–3107.

United States Court of Appeals,
Ninth Circuit.

Oct. 1, 1979.

Certiorari Denied Feb. 19, 1980.

See 100 S.Ct. 1026.

Marc D. Blackman, Asst. U. S. Atty., Portland, Or., for plaintiff-appellant.

Thomas F. Levak, argued, Norman Sepenuk, Leslie M. Roberts, Kell, Alterman & Runstein, Portland, Or., on brief, for defendants-appellees.

Before BROWNING and KENNEDY, Circuit Judges, and PECKHAM,* District Judge.

BROWNING, Circuit Judge:

■ Appellants were indicted for violating the Federal Election Campaign Act, 2 U.S.C. §§ 431–456 (1976)[1]. The district court dismissed the indictment on the ground that the Attorney General had failed to exhaust the administrative remedy before the Federal Election Commission (FEC), available under section 437g of the Act, before seeking an indictment. We conclude Congress did not intend to impose this limitation upon the power of the Attorney General to enforce the law. We therefore reverse.

The administrative remedy was added to the statute by amendments adopted in 1974, effective on January 1, 1975, and in 1976.[2] The government argues that the administrative remedy is therefore inapplicable to the alleged violations, which occurred in 1974. *See* note 1. We do not reach this question, for we conclude that even if the administrative remedy applied, its exhaustion was not a prerequisite to indictment.

■ We approach the interpretation of the statute with a presumption against a congressional intention to limit the power of the Attorney General to prosecute offenses under the criminal laws of the United States. In general, the "conduct [of] federal criminal litigation . . . is 'an executive function within the exclusive prerogative of the Attorney General,'" *In re Subpoena of Persico*, 522 F.2d 41, 54 (2d Cir. 1975), *quoting United States v. Cox*, 342 F.2d 167, 190 (5th Cir. 1965) (Wisdom, J.,

concurring). Congress may limit or reassign the prosecutorial responsibility. *See Case v. Bowles*, 327 U.S. 92, 96–97, 66 S.Ct. 438, 90 L.Ed. 552 (1946); *Nader v. Saxbe*, 162 U.S.App.D.C. 89, 92–93, 497 F.2d 676, 679–80 n.19 (D.C.Cir. 1974); *FTC v. Guignon*, 390 F.2d 323, 324 (8th Cir. 1968). But "[t]o graft such an exception upon the criminal law would require a clear and unambiguous expression of the legislative will." *United States v. Morgan*, 222 U.S. 274, 282, 32 S.Ct. 81, 82, 56 L.Ed. 198 (1911).

The administrative remedy the Attorney General failed to invoke is set out in section 437g of the Act. "Any person" who believes a violation of the Act has occurred may file a complaint, under oath, with the FEC. 2 U.S.C. § 437g(a)(1).[3] The "person" filing such a complaint is subject to 18 U.S.C. § 1001, which punishes submission of false statements to a government agency as a felony. *Id.* The FEC must notify the person complained against and conduct an investigation. 2 U.S.C. § 437g(a)(2). The FEC must not disclose its proceedings without the consent of the person complained against, 2 U.S.C. § 437g(a)(3)(B), and must give that person a reasonable opportunity to show that no action should be taken against him. 2 U.S.C. § 437g(a)(4). If there is reasonable cause to believe a violation has occurred, the Commission must devote a minimum period, 30 days in most cases, to an attempt to settle the matter by means of a conciliation agreement. 2 U.S.C. § 437g(a)(5)(A). If the Commission is unable to correct the violation informally and determines there is probable cause to believe a violation has occurred, it may in-

---

* Honorable Robert F. Peckham, District Judge, Northern District of California, sitting by designation.

1. The indictment was returned August 13, 1976, alleging violations of 18 U.S.C. § 610 (Supp. V 1975). This section was later repealed and re-enacted as section 441b of the Federal Election Campaign Act (FECA), *see* Pub.L. No. 94–283, 90 Stat. 475 (effective May 11, 1976). The FECA included a savings clause, section 114, which preserved liability for violations of 18 U.S.C. § 610. *See id.,* § 114, 90 Stat. 495 (1976).

2. The Federal Election Campaign Act Amendments of 1974 Pub.L. No. 93–443 (Oct. 15, 1974), 88 Stat. 1284, and the Federal Election Campaign Amendments of 1976, Pub.L. No. 94–285 (May 11, 1976), 90 Stat. 483.

3. The FEC also may activate the civil enforcement mechanism if "on the basis of information ascertained in the normal course of carrying out its supervisory responsibilities, [it] has reason to believe . . . . a violation has occurred . . . ." 2 U.S.C. § 437g(a)(2).

stitute a civil action seeking an injunction or civil penalty. 2 U.S.C. § 437g(a)(5)(B). If the Commission determines that there is probable cause to believe a "knowing and willful" violation as defined in 2 U.S.C. § 441j has occurred, it may refer the matter to the Attorney General for criminal prosecution without prior conciliation efforts, 2 U.S.C. § 437g(a)(5)(D). A conciliation agreement, unless violated, constitutes a complete bar to further action by the Commission, 2 U.S.C. § 437g(a)(5)(A), and may be introduced as mitigating evidence in any criminal action brought by the Attorney General. 2 U.S.C. § 441j(b), (c).

Nothing in these provisions suggests, much less clearly and ambiguously states, that action by the Department of Justice to prosecute a violation of the Act is conditioned upon prior consideration of the alleged violation by the FEC. Indeed, it would strain the language to imply such a condition.

As noted, the administrative process established by the statute is initiated by the filing of complaint by any "person," defined in section 431(h) as "an individual, partnership, committee, association, corporation, labor organization, and any other organization or group of persons." The complaint is to be in writing, verified by the complainant, and is expressly subject to the criminal penalties provided for the submission of false statements to the government. These are hardly apt provisions to describe sub-

mission by the Attorney General to the FEC of evidence that a violation of law has occurred.

■ The remaining provisions of section 437g detail duties of the FEC and rights of persons complained against, not limitations upon the statutory power of the Attorney General to initiate prosecution on behalf of the United States, see 28 U.S.C. §§ 515–51?, 533 (1976). The fact that the FEC may refer certain complaints to the Department of Justice for prosecution, after administrative processing, 2 U.S.C. § 437g(a)(5)(D), does not in itself imply that administrative processing and referral are prerequisite to the initiation of litigation by the Attorney General. See United States v. Morgan, 222 U.S. 274, 281–82, 32 S.Ct. 81, 56 L.Ed. 198 (1911); Donaldson v. United States, 264 F.2d 804, 807 (6th Cir. 1959); United States v. Gris, 247 F.2d 860, 863 (2d Cir. 1957).[4]

The district court "agree[d] with the general proposition that the courts should not lightly imply an intent by Congress to withdraw from the Attorney General his traditional power to decide when and if to seek indictments for apparent violation of the federal criminal laws." The district court observed, however, that "there are instances in which Congress has decided to withdraw this power, but to do so in less than clear and express language"; the court concluded that the Federal Election Campaign Act is such an instance.[5]

---

**4.** *United States v. St. Regis Paper Co.*, 355 F.2d 688 (2d Cir. 1966), relied upon by appellees is different than this case and the cases cited in the text for the reasons, among others, that *St. Regis* was "not concerned either with the scope of the Attorney General's authority to enforce federal criminal statutes or with the effect of a statutory provision authorizing an administrative agency to initiate prosecution of such statute on his power to prosecute." 355 F.2d at 694.

*Triangle Candy Co. v. United States*, 144 F.2d 195 (9th Cir. 1944) is also distinguishable. The Court held that failure of the Food and Drug Administration to comply with a statutory requirement that the accused be provided with a sample of the substance claimed to be adulterated, barred criminal prosecution. The court reasoned that the provision was intended to provide the defendant with an opportunity to

make an independent analysis of the subsection, which might well be critical to the defense. Appellees find an analogy in the right to use a conciliation agreement as evidence negating criminal intent, or as a factor in support of ameliorating punishment, but as pointed out in the text, in the present case it is clear from the face of the statute that Congress did not intend to guarantee the opportunity to obtain a conciliation agreement to every person accused of violating the Act.

**5.** The Court cited *United States v. Zucca*, 351 U.S. 91, 76 S.Ct. 671, 100 L.Ed. 964 (1956). In that case, however, the language of the statute, was sufficiently specific to permit the Court to say, "[w]ere we obliged to rely solely on the wording of the statute, we would have no difficulty in reaching the conclusion that the filing of the affidavit [of good cause] is a prerequisite

The court reasoned that the statutory scheme reflected "an apparent desire by Congress to avoid the detrimental effects on political candidates and others of mere *accusations* of wrongdoing in the electoral area," which, though groundless, "can have a serious impact on a candidate's credibility and standing among his constituency." In the court's view, the procedural scheme devised by Congress to protect candidates from the adverse political effects of groundless or insubstantial charges will be frustrated "if the Attorney General has the power to step in and obtain an indictment in a case which was never referred to the FEC and as to which the FEC might have determined that a less drastic remedy (*e. g.,* conciliation, civil penalty, civil action) would have been appropriate." The district court concluded that Congress "determined that charges of violations of the election law are especially sensitive and that an agency other than the Department of Justice ought to make an initial review of such charges."

The court cited no legislative history in support of its conclusion, apparently relying instead upon inferences drawn from the face of the statute itself. The statutory provisions do contain numerous restrictions apparently designed to minimize the risk that the administrative process might be used unfairly; these restrictions are not aimed at the Attorney General, however, but at complainants to the FEC and the FEC itself. For example, "to assure that enforcement actions . . . will be the product of mature and considered judgment," H.Rep. No. 917, 94th Cong., 2d Sess., 3 (1976), *reprinted in FEC Legislative History of Federal Election Campaign Act Amendments of 1976* at 803 (1977), a supermajority of four of the six members of the FEC is required to initiate civil enforcement proceedings or establish enforcement policies and guidelines, 2 U.S.C. § 437c(c). Again, complaints must be under oath, and complainants are warned that falsification may constitute a felony. The FEC, not the

Department of Justice, is prohibited from acting on anonymous complaints. 2 U.S.C. § 437g(a)(1). The FEC must not make the notification and investigation public. The FEC must afford the person involved an opportunity to demonstrate that no action should be taken by the FEC. 2 U.S.C. § 437g(a)(4). The FEC must "make every endeavor for a period [with a few stated exceptions] of not less than 30 days" to resolve the problem of conciliation, and to enter into a conciliation agreement with the person involved. 2 U.S.C. § 437g(a)(5)(A). A conciliation agreement "shall constitute a complete bar to any further action by the Commission," but not by the Department of Justice. *Id.* The FEC may file a civil suit only after conciliation has been tried and has failed. In contrast, the FEC may refer a possible knowing and willful violation to the Attorney General without first complying with the statutory requirements for administrative conciliation. 2 U.S.C. § 437 g(a)(5)(D).

From these provisions it is fair to infer that Congress was concerned that complainants and the FEC itself might launch unfounded, partisan accusations that could injure a candidate merely because they were published. But there is nothing in these provisions suggesting a similar concern as to the Department of Justice. To the contrary, the fact that the administrative conciliation, which had as its purpose "protecting candidates from spurious political charges",[6] is not required if a complaint is referred to the Attorney General for prosecution rather than forming the basis for a civil action by the FEC, demonstrates that Congress had sufficient confidence in the discretion and nonpartisanship of the Department of Justice to permit the Department to proceed without special safeguards. Congress's criticism of the enforcement of the Act by the Department of Justice was not that the Department had proceeded with public prosecutions unfairly and with-

---

to maintaining a denaturalization suit." 351 U.S. at 94, 76 S.Ct. at 674.

6. *See* 122 Cong.Rec.S. 6485 (daily ed. May 4, 1976) (remarks of Sen. Stevenson), *reprinted in* Legislative History of Federal Election Campaign Act Amendments of 1976, at 1115 (1977).

out sufficient cause but rather that the. Department's enforcement efforts were too little and came too late.[7]

Moreover, there is substantial direct evidence that Congress did not intend to make criminal enforcement by the Department of Justice contingent upon prior FEC consideration.

As the 1974 amendments passed the Senate, they vested in the FEC primary jurisdiction over criminal as well as civil enforcement, and expressly provided that "[v]iolations . . . shall be prosecuted by the Attorney General or personnel of the Department of Justice *only after the Commission is consulted and consents to such prosecution."* S.Rep. No. 1237, 93d Cong., 2d Sess. 94, *reprinted in* [1974] U.S.Code Cong. & Admin.News, pp. 5587, 5661 (emphasis added). This provision was deleted by the Conference Committee. The FEC's primary jurisdiction was limited to civil enforcement. The Conference Committee stated, "[t]he primary jurisdiction of the FEC to enforce the provisions of the Act is not intended to interfere in any way with the activities of the Attorney General or Department of Justice personnel in performing their duties under the laws of the United States." H.Rep. No. 1438, 93d Cong., 2d Sess. 94, *reprinted in FEC Legislative History of Federal Election Campaign Act Amendments of 1974,* at 1038 (1974).[8]

In submitting the Conference Report on the 1974 amendments to the Senate, Senator Cannon remarked that after first attempting to resolve a complaint administratively, the FEC would have the power to file a civil action. He continued: "However, the Department of Justice would not be deprived of any of its power to initiate civil or criminal actions in response to referrals by the FEC *or complaints from other sources."* 120 Cong.Rec.S. 34373 (1974) *reprinted in Legislative History* at 1079 (1974) (emphasis added).

The 1976 amendments extended and refined this arrangement under which civil enforcement powers were allocated to the FEC and criminal enforcement powers to the Department of Justice.

Senator Cannon, Chairman of the Senate Committee on Rules and Administration, which reported the 1976 Amendments, summarized the effect of the amendments as follows:

"The bill would grant the exclusive civil enforcement of the act to the FEC to avoid confusion and overlapping with the Department of Justice, *but at the same time, retain the jurisdiction of the Department of*

---

7. *See, e. g.,* 120 Cong.Rec.S. 34377 (1974) (remarks of Sen. Clark), *reprinted in* Legislative History at 1083 (1974); *Federal Election Campaign Act Amendments, 1976: Hearings on S. 2911, 2912, 2953, 2980, and 2987 Before the Subcomm. on Privileges and Elections of Senate Comm. on Rules and Administration, 94th Cong., 2d Sess.* (Feb. 18, 1976) 160 (statement of Thomas Harris, Commissioner, FEC), *reprinted in* Legislative History, at 166 (1977).

8. The full paragraph reads:

The conference substitute generally follows the provisions of the House amendment with two modifications. First, the Commission is given power to bring civil actions in Federal district courts to enforce the provisions of the Act where its informal methods of obtaining compliance fail to correct violations. Secondly, the Commission is given primary jurisdiction for the enforcement of the provisions of the Act. Thus, *any person* must exhaust his administrative remedies with respect to violations under this Act. The primary jurisdiction of the FEC to enforce the provisions of the Act is not intended to interfere in any way with the activities of *the Attorney General or Department of Justice personnel* in performing their duties under the laws of the United States.
H.Rep. No. 1438, 93d Cong., 2d Sess. 94 (1974), *reprinted in* Legislative History, at 1038 (1974) (emphasis added).

Appellees argue that the third and fourth sentences support appellees' contention that Congress intended that the Attorney General must refer complaints to FEC for administrative processing before instituting prosecution. But the apparent purpose of the paragraph is to describe the exclusive power of the FEC to process complaints filed by "any person," and to initiate civil enforcement actions if the informal remedy proves ineffective. The last sentence is added to make it clear that the provisions regarding the handling of complaints filed by "any person" are not intended to restrict the Attorney General and Department of Justice in prosecuting violations of the law.

Justice for the criminal prosecution of any violations of this act." 122 Cong.Rec.S. 7288–89 (1976), *reprinted in Legislative History* at 470–71 (1977) (emphasis added).

Similarly, the Report accompanying the House bill stated: "H.R. 12406, *following the pattern set in the 1974 Amendments*, channels to the Federal Election Commission complaints alleging on any theory, that a person is entitled to relief, because of conduct regulated by this Act, *other than complaints directed to the Attorney General and seeking the institution of a criminal*

proceeding." H.Rep. No. 917, 94th Cong., 2d Sess. 4, *reprinted in Legislative History* at 804 (1977) (emphasis added). *See also* 122 Cong.Rec.H. 12199 (1976) (remarks of Mr. Hays), *reprinted in Legislative History* at 1078 (1977).

■ Both the Department of Justice and FEC interpret the Act as amended in 1974 and 1976 to mean that the Department may investigate and prosecute knowing and willful violations without first exhausting FEC's investigative and conciliation procedures.[9] Substantial deference is due this

---

9. The United States relies upon the following document:

*MEMORANDUM OF UNDERSTANDING BETWEEN THE DEPARTMENT OF JUSTICE AND THE FEDERAL ELECTION COMMISSION*

The following is intended to serve as a guide for the Department of Justice (hereinafter referred to as the "Department") and the Federal Election Commission (hereinafter referred to as the "Commission") in the discharge of their respective statutory responsibilities under the Federal Election Campaign Act and chapters 95 and 96 of the Internal Revenue Code:

1) The Department recognizes the Federal Election Commission's exclusive jurisdiction in civil matters brought to the Commission's attention involving violations of the Federal Election Campaign Act and chapters 95 and 96 of the Internal Revenue Code. It is agreed that Congress intended to centralize civil enforcement of the Federal Election Campaign Act in the Federal Election Commission by conferring on the commission a broad range of powers and dispositional alternatives for handling non-wilful or unaggravated violations of these provisions.

2) The Commission and the Department mutually recognize that all violations of the Federal Election Campaign Act and the anti-fraud provisions of chapters 95 and 96 of the Internal Revenue Code, even those committed knowingly and wilfully, may not be proper subjects for prosecution as crimes under 2 U.S.C. 441j, 26 U.S.C. 9012 or 26 U.S.C. 9042. For the most beneficial and effective enforcement of the Federal Election Campaign Act and the anti-fraud provisions of chapters 95 and 96 of the Internal Revenue Code, those knowing and wilful violations which are significant and substantial and which may be described as aggravated in the intent in which they were committed, or in the monetary amount involved should be referred by the Commission to the Department for criminal prosecution review. With this framework, numerous factors will frequently affect the determination of referrals, including the repetitive nature of the acts, the existence of a practice or

pattern, prior notice, and the extent of the conduct in terms of geographic area, persons, and monetary amounts among many other proper considerations.

3) Where the Commission discovers or learns of a probable significant and substantial violation, it will endeavor to expeditiously investigate and find whether clear and compelling evidence exists to determine probable cause to believe the violation was knowing and wilful. If the determination of probable cause is made, the Commission shall refer the case to the Department promptly.

4) Where information comes to the attention of the Department indicating a probable violation of Title 2, the Department will apprise the Commission of such information at the earliest opportunity.

Where the Department determines that evidence of a probable violation of Title 2 amounts to a significant and substantial knowing and wilful violation, the Department will continue its investigation to prosecution when appropriate and necessary to its prosecutorial duties and functions, and will endeavor to make available to the Commission evidence developed during the course of its investigation subject to restricting law, where the alleged violation warrants the impaneling of a grand jury, information obtained during the course of the grand jury proceedings will not be disclosed to the Commission, pursuant to Federal Rules of Criminal Procedure.

Where the Department determines that evidence of a probable violation of Title 2 does not amount to a significant and substantial knowing and wilful violation (as described in paragraph 2 hereof), the Department will refer the matter to the Commission as promptly as possible for its consideration of the wide range of appropriate remedies available to the Commission.

5) This memorandum of understanding controls only the relationship between the Commission and the Department. It is not intended to confer any procedural or substantive rights on any person in any matter before the Department, the Commission or any court or agency of government.

interpretation of a statute by the agencies charged with its administration. *United States v. Rutherford,* 442 U.S. 544, 99 S.Ct. 2470, 61 L.Ed.2d 68 (1979); *Board of Governors v. First Lincolnwood Corp.,* 439 U.S. 234, 248, 99 S.Ct. 505, 58 L.Ed.2d 484 (1978); *Bayside Enterprises Inc. v. NLRB,* 429 U.S. 298, 304, 97 S.Ct. 576, 50 L.Ed.2d 494 (1977); *Train v. National Resources Defense Council, Inc.,* 421 U.S. 60, 87, 95 S.Ct. 1470, 43 L.Ed.2d 731 (1975); *Zuber v. Allen,* 396 U.S. 168, 192, 90 S.Ct. 314, 24 L.Ed.2d 345 (1969); *Udall v. Tallman,* 380 U.S. 1, 16, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965); *Power Reactor Development Corp. v. International Union of Electricians,* 367 U.S. 396, 408, 81 S.Ct. 1529, 6 L.Ed.2d 924 (1961); *United States v. Zucca,* 351 U.S. 91, 96, 76 S.Ct. 671, 100 L.Ed. 964 (1956); *United States v. American Trucking Associations,* 310 U.S. 534, 549, 60 S.Ct. 1509, 84 L.Ed. 1345 (1940); *Norwegian Nitrogen Products Co. v. United States,* 288 U.S. 294, 315, 53 S.Ct. 350, 77 L.Ed. 796 (1933).

■ Appellees argue that because a conciliation agreement may be admitted to negate criminal intent (2 U.S.C. § 441j(b)), or ameliorate sentence (2 U.S.C. § 441j(c)), in the event of a later prosecution, the opportunity to reach such an agreement is an important procedural safeguard, and it would be "obviously unacceptable" if its availability "depends on the happenstance of whether a complaint is first lodged with the FEC or the Department of Justice."

But clearly Congress did not intend that persons violating the Act *must* be given an opportunity to enter into a conciliation agreement before a criminal prosecution could be initiated. The Act expressly provides that if the FEC finds probable cause to believe a knowing and willful violation has occurred, the FEC may refer the apparent violation to the Attorney General without regard to the requirement that the FEC attempt conciliation. 2 U.S.C. § 437g (a)(5)(D).

Appellees also find support for their position in language used by Senator Clark in his successful opposition to a provision in the original 1976 Senate bill that would have barred the Department of Justice from instituting a criminal prosecution if the FEC had entered into a conciliation agreement with respect to the conduct involved. 122 Cong.Rec.S. 6956 (1976) (remarks of Senator Clark), *reprinted in Legislative History* at 414 (1977). *See also id.* at 7181–82 *reprinted in Legislative History, supra,* at 448. Senator Clark introduced an amendment which substituted for the proposed bar on criminal prosecution the present provision that a prior conciliation agreement can be introduced in a criminal action as evidence of lack of intent to commit the alleged offense, and as a mitigating circumstance to be considered in imposing punishment. In explaining this amendment, Senator Clark made the remark upon which appellees rely, stating, "No one would want the Department of Justice to be continually undercutting the actions of the Federal Election Commission by initiat-

UNITED STATES DEPARTMENT OF JUSTICE

DATE: 12/5/77 BY: S/ Benj R Civiletti
Benjamin R. Civiletti
Assistant Attorney General
Criminal Division

FEDERAL ELECTION COMMISSION

DATE: 12/8/77 BY: Will Oldaker
William C. Oldaker
General Counsel

\*   \*   \*   \*   \*   \*

This Memorandum of Understanding was not before the district court, and appellees argue that it should not be considered by this court. The Memorandum was published at 43 Fed. 5441, as F.R.Doc. 78–3415, filed Feb. 7, 1978, and therefore falls within the provisions of 44 U.S.C. § 1507 that "The contents of the Federal Register shall be judicially noticed . . . ."

Appellees argue that appellants have failed to demonstrate that the Memorandum represents the *"present* policy of the Commission itself," (emphasis supplied). But the Memorandum is relevant as a reflection of the interpretation of a new statute by the officers charged with its administration contemporaneous with its enactment. Appellees contend that the interpretation cannot be characterized as "contemporaneous" because of the eighteen-month time lag between the effective date of the 1976 amendments and the date of the Memorandum. Given the pace of formulation of official government positions, eighteen months after the passage of the Act is reasonably contemporaneous with that event.

ing criminal prosecutions against people who have already entered into conciliation agreements with the FEC." In context, Senator Clark's statement hardly supports an inference that the Department of Justice was to be required to submit complaints to the FEC before presenting them to a grand jury.[10]

[redacted] Finally, appellees point to the statement of Senator Brock in debate on the 1976 amendments flatly supporting appellees' interpretation of the Act.[11] Senator Brock was a leading Senate opponent of the legislation. His characterization of the legislation is thereby entitled to little weight. *See Holtzman v. Schlesinger*, 414 U.S. 1304, 1312–13 n. 13, 94 S.Ct. 1, 38 L.Ed.2d 18 (1974 per Marshall, Circuit Justice). *Labor Board v. Fruit Packers*, 377 U.S. 58, 66, 84 S.Ct. 1063, 12 L.Ed.2d 129 (1964); *Schwegmann Bros. v. Calvert Corp.*, 341 U.S. 384, 394–95, 71 S.Ct. 745, 95 L.Ed. 1035 (1951). *See also Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 203–04 n. 24, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976).

In sum, neither the language nor the legislative history of the Act provides the kind of "clear and unambiguous expression of legislative will" necessary to support a holding that Congress sought to alter the traditionally broad scope of the Attorney General's prosecutorial discretion by requiring initial administrative screening of alleged violations of the Act. On the contrary, the language and legislative history indicates that while centralizing and strengthening the authority of the FEC to enforce the Act administratively and by civil proceedings, Congress intended to leave undisturbed the Justice Department's authority to prosecute criminally a narrow range of aggravated offenses.

Reversed and remanded.

[redacted]

10. Senator Clark said:

> My own concern goes to this point: No one would want the Department of Justice to be continually undercutting the actions of the Federal Election Commission, by initiating criminal prosecutions against people who have already entered into conciliation agreements with the FEC. Nevertheless, I do not believe we would want the FEC to be able to go completely unchallenged in entering into such agreements.
>
> If the Commission should enter into a particularly weak agreement, even in the face of a serious violation of the act, it should be held accountable for such action. Prohibiting criminal prosecutions by the Justice Department would eliminate this necessary check.
>
> Furthermore, Mr. President, section 329(b) would be an unprecedented restriction on the prosecutorial powers of the Attorney General. A mere agreement entered into by an independent executive branch agency would, in and of itself, be enough to tie the hands of the Justice Department.
>
> This amendment seeks to strike a balance between the intent of the provision, on the one hand, and the important issue of Commission accountability, on the other. 122 Cong.Rec.S. 6956 (1976), *reprinted in* Legislative History at 414 (1977) (emphasis added).

The amendment was agreed to by the Senate, 122 Cong.Rec.S. 7181–82 (1976), *reprinted in* Legislative History, *supra*, at 448, and eventually incorporated into the criminal penalties provision of the 1976 Act, 2 U.S.C. § 441j(b), (c).

11. Senator Brock said:

> Equally bad, the Justice Department is no longer able to prosecute on its own. If an aggressive district attorney finds a clear violation of the law, he cannot take the person into court. He must refer the case to the Federal Election Commission. And what if this agency, which Congress has neatly overtaken, imposes nothing but a simple fine? That is it. The Justice Department can take no further action—even if it violently disagrees with the decision.

122 Cong.Rec.S. 12471 (1976), *reprinted in* Legislative History at 1110 (1977).