UNITED STATES of America, Plaintiff,

v.

ORKIN EXTERMINATING CO.,
INC., Defendant.

Crim. A. No. 88–0040–R.

United States District Court,
W.D. Virginia,
Roanoke Division.

June 9, 1988.

U.S. Atty.'s Office, Roanoke, Va., for plaintiff.

Samuel G. Wilson, Law Offices, Woods, Rogers, Muse, Walker & Thornton, Roanoke, Va., for defendant.

## MEMORANDUM OPINION

TURK, Chief Judge.

This case is before the court on the defendant, Orkin Exterminating Co., Inc.'s (hereinafter "Orkin") motion to dismiss the indictment returned against it. Orkin argues that under 7 U.S.C. § 136w–1 (1982), Congress has delegated enforcement authority for use violations of the Federal Insecticide, Fungicide and Rodenticide Act (hereinafter "FIFRA" or "the Act"), 7 U.S. C. § 136 *et seq.* (1982) to qualified states, and this delegation has divested the Attorney General of his authority to bring prosecutions under FIFRA. The Government contends that FIFRA does not contain clear and unambiguous language restricting the Attorney General's power to enforce it. Without this language, the Government continues, the Attorney General retains his power to prosecute federal criminal laws, of which FIFRA is one.

### STATEMENT OF THE CASE

The basic facts are not in dispute. On September 25 and 26, 1986, employees of Orkin used the pesticide Vikane to exterminate the home of Hubert M. and Frieda Watson, in Galax, Virginia. The procedure required enclosing the house with a tarpaulin and releasing the pesticide inside. Mr. and Mrs. Watson left their house on the 25th and did not reenter it until the next afternoon. Within days, both were suffering from Vikane poisoning. Mr. Watson died on September 28th and Mrs. Watson died on October 2.

The Virginia Department of Agriculture and Consumer Service (hereinafter "VDACS") promptly began an investigation, which led to the five-year revocation of the applicator licenses of the Orkin employees who had exterminated the Watson home. According to Mr. William Walls, the Supervisor of the Office of Pesticide Regulation, VDACS, this was the harshest penalty his office could administer. Believing further enforcement action may be appro-

priate, he referred the matter to the Commonwealth's Attorney for Grayson County. (Affidavit of William Walls, United States' Response to Defendant's Motion to Dismiss, Exhibit C).

The Commonwealth's Attorney for Grayson County, Mr. Douglas Vaught, has provided an affidavit stating that while acting as Commonwealth's Attorney, he obtained a three count indictment against Orkin charging it with two counts of involuntary manslaughter, and one count of applying a pesticide inconsistent with its labeling. The Grayson County Circuit Court subsequently dismissed the involuntary manslaughter indictments, holding that a corporation could not be convicted for those charges. At that point, Mr. Vaught felt that the penalties provided under Virginia law were not commensurate with the wrong that had allegedly been committed, and contacted the United States Attorney's Office requesting that a federal prosecution of Orkin be initiated. He subsequently asked the Grayson County Circuit Court to *nolle prosequi* the criminal charges pending against Orkin, which it did on July 16, 1987.[1] Affidavit of Douglas Vaught, United States' Response to Defendant's Motion to Dismiss, Exhibit D).

A federal grand jury returned a five count indictment against Orkin on April 21, 1988, charging Orkin with criminal conduct in connection with the deaths of the Watsons. It is that indictment which Orkin is presently challenging.

Orkin strongly argues that the federal government has, under 7 U.S.C. § 136w–1, delegated enforcement authority to the states. Orkin maintains that §§ 136w–1 and 136w–2 [2] establish a delicate balance of power between all federal and state authorities, and that § 136w–1 divests the Attorney General of his power to prosecute under FIFRA.

The Government maintains that the Attorney General's power to enforce federal criminal laws is plenary, and is not diminished absent clear and unambiguous language from Congress. Since there is no such language in FIFRA, the Government contends that the Attorney General has authority to bring this prosecution. The court is in agreement with the Government, and will deny the defendant's motion to dismiss. While § 136w–1 provides for delegating primary enforcement responsibility, it does not create exclusive enforcement jurisdiction in the states.

## DISCUSSION

■ In *United States v. Morgan*, 222 U.S. 274, 32 S.Ct. 81, 56 L.Ed. 198 (1911), the Supreme Court held that the Attorney General's authority to enforce the criminal laws is not diminished without "a clear and unambiguous expression of the legislative will." *Id.* at 282, 32 S.Ct. at 82. In *Morgan*, it was argued that as the Secretary of the Department of Agriculture had authority to investigate violations of the Pure Food Law, the Attorney General did not have that authority. The Court examined the Pure Food Law and determined that it lacked a clear indication of Congressional intent to restrict the Attorney General's authority. Stating that "[r]epeals by implication are not favored," *id.* at 281, 32 S.Ct. at 82, the Court refused to give credence to an argument similar to the one made here by Orkin. The Court held that the Attorney General's authority had not been diminished by the Pure Food Law because Congress did not clearly and unambiguously indicate such an intent.

Research reveals that no other courts have considered the Attorney General's authority to bring criminal prosecutions under FIFRA, they have considered the Attorney General's power to prosecute under

---

**1.** The court notes that at oral argument the attorney for the defendant, in response to a question from the court, indicated that the Virginia statute of limitations had run on the state charges initially brought against Orkin.

**2.** Section 136w–1 delegates "primary enforcement responsibility" to those states that have either entered into a cooperative agreement with the EPA Administrator, or have been determined by the Administrator to be qualified to assume this responsibility. Section 136w–2 provides for enforcement action by the Administrator when a qualified state fails to uphold its enforcement responsibility.

other statutes, and have consistently followed the requirement for clear and unambiguous language established in *Morgan.* In *Marshall v. Gibson's Products, Inc.,* 584 F.2d 668 (5th Cir.1978), the Fifth Circuit considered whether the district court had jurisdiction over a case brought by the Secretary of Labor to enforce inspection provisions of the Occupational Safety and Health Act of 1970. 29 U.S.C. § 657(a). In holding that the district court did not have jurisdiction because the Secretary was without authority to bring the suit, the court noted that "in the absence of an express congressional directive to the contrary, [the Attorney General] is vested with plenary power over all litigation to which the United States or one of its agencies is a party." *Marshall,* 584 F.2d at 676, n. 11 (citing 28 U.S.C. §§ 516, 519 (1976)); *ICC v. Southern Ry. Co.,* 543 F.2d 535–36 (5th Cir.1976).

In *United States v. International Union of Operating Engineers, Local 701,* 638 F.2d 1161 (9th Cir.1979), *cert. denied* 444 U.S. 1077, 100 S.Ct. 1026, 62 L.Ed.2d 760 (1980), the Ninth Circuit considered the Federal Election Campaign Act, 2 U.S.C. §§ 431–436 (1976), and determined that it did not preclude a prosecution brought by the Attorney General. The court "approach[ed] the interpretation of the statute with a presumption against a congressional intention to limit the power of the Attorney General," 638 F.2d at 1162, and stated that such an intention would have to be "clear and unambiguous" as required by *Morgan. Id.*

In *United States v. Jackson,* 433 F.Supp. 239 (W.D.N.Y.1977), the district court held that the Attorney General's authority to prosecute under the Presidential Primary Matching Payment Account Act, 26 U.S.C. §§ 9031–9042 (1971) was not diminished by provisions calling for preliminary investigations by the Federal Election Commission. The court stated that where "[t]he Attorney General is vested with the authority and responsibility to enforce all criminal statutes passed by Congress ... [i]t is reasonable to presume that ... [Congress intends] ... the Attorney General to enforce the statute on his own prerogative." *Jack-*

*son,* 433 F.Supp. at 241, (citing 28 U.S.C. § 515 (other citations omitted)).

Likewise, in *United States v. Tonry,* 433 F.Supp. 620 (E.D.La.1977), the district court, in considering the Federal Elections Campaign Act, 2 U.S.C. §§ 431–456, held that absent a specific provision "prohibiting the Attorney General from going forward with [a] criminal investigation.... the general authority of the Attorney General to proceed cannot be limited." *Tonry,* 433 F.Supp. at 623.

Turning to the instant case, the necessary starting point is an examination of FIFRA. For Orkin's argument to prevail, there must be an unequivocal expression of Congress' intention to restrict the Attorney General's authority.

Section 136w–1 delegates primary enforcement responsibility to a state when either the Administrator of the EPA has determined that a state is qualified to have primary enforcement authority, § 136w–1(a), or when a state enters into a cooperative agreement with the Administrator, § 136w–1(b). Section 136w–1(c) provides for EPA enforcement of FIFRA in emergency situations. All of these provisions detail a relationship between the states and the EPA. There is no reference anywhere in the section to the Attorney General's power to enforce FIFRA. While the section refers to the responsibility of the state as "primary," it does not term the state's authority as "exclusive." Section 136w–1 simply does not, as Orkin asserts, attempt to define the relationship under FIFRA between the states and the entire Federal Government. Orkin is asking this court to imply a revocation of the Attorney General's power because the state has assumed "primary" enforcement responsibility. In accordance with *Morgan,* the court will decline to imply such a revocation.

Orkin contends that § 136w–2 provides the only way for the "Federal Government" to regain the enforcement authority delegated under § 136w–1. Orkin's reading is inaccurate. Section 136w–2 is replete with references to "the Administrator." This section details that the enforce-

ment authority of the Administrator of the EPA is explicitly retained, and can be utilized in certain specific instances when state action is either nonexistent, inappropriate, or inadequate. Section 136w-2 does not, as Orkin contends, determine when the Attorney General can enforce FIFRA. Such a reading would be incorrect, in part because § 136w-1 does not divest the Attorney General of his enforcement authority and in part because it is not for the court to substitute "Attorney General" or "Federal Government" every time the statute uses the term "Administrator."

The term "Administrator" is used for a reason and is to be given effect, if possible. *United States v. Hunter*, 459 F.2d 205 (4th Cir.), *cert. denied*, 409 U.S. 934, 93 S.Ct. 235, 34 L.Ed.2d 189 (1972). The statute specifies when the *Administrator*—not the Attorney General—is authorized to bring an enforcement action. Merely by authorizing the Administrator to act, the section does not prevent the Attorney General from also acting. This provision is analagous to those provisions interpreted in *Morgan, Jackson,* and *Tonry,* where the courts held that the Attorney General was not precluded from prosecuting under the relevant statutes despite Congressional authorization of enforcement action by other entities.

Section 136*l* also clearly indicates Congress' intent that the Attorney General retain his authority to bring criminal prosecutions under FIFRA. This section establishes civil and criminal penalties for violations of the Act. All of the provisions authorizing civil penalties, §§ 136*l* (a)(1)–136*l* (a)(4), specifically provide that the Administrator of the EPA shall levy those penalties. Section 136*l* (a)(5) requires the Administrator to turn uncollected civil penalty cases over to the Attorney General, so that he can initiate collection proceedings in court.

Section 136*l* (b), which provides criminal penalties for FIFRA violations, is silent as to who should bring the prosecution. Under 28 U.S.C. § 516(1982), the Attorney General is required to represent the United States' interest in matters before the courts. This includes criminal prosecution.

*United States v. General Dynamics Corp.*, 828 F.2d 1356, 1366 (9th Cir.1987) (citations omitted). When Congress did not specify that the Administrator should enforce the criminal provisions of FIFRA, it is reasonable to presume that Congress intended the Attorney General to do so. *Jackson, supra,* 433 F.Supp. at 241. If Congress had intended the Administrator to bring these criminal prosecutions, it would have so specified, as it did in 136*l* (a) requiring the Administrator to assess civil penalties.

The silence in § 136*l* (b), especially when considered in conjunction with the explicit provision in § 136*l* (a) that the Administrator should levy civil penalties, is not the "clear and unambiguous" language required by *Morgan* to diminish the Attorney General's authority.

Sections 136w-1 and 136w-2 also lack any clear indication of a Congressional intent to limit the Attorney General. These sections simply provide for a system of delegating authority between the EPA and the states. They are silent as to the Attorney General's power to bring prosecutions under FIFRA. While Congress certainly has the authority to so limit the Attorney General, *United States v. California*, 332 U.S. 19, 27, 67 S.Ct. 1658, 1662, 91 L.Ed. 1889 (1947), it has not done so in this statute. The court must hold that the Attorney General has the authority to bring this criminal prosecution.

■ When a statute is not ambiguous, or unclear, a review of legislative history is normally not necessary. *United States v. Oregon*, 366 U.S. 643, 81 S.Ct. 1278, 6 L.Ed.2d 575 (1961); *Pritchard v. Pritchard*, 732 F.2d 372 (4th Cir.1984). The court's determination that FIFRA clearly does not diminish the Attorney General's authority makes a review of the legislative history superfluous. Such a review shows, however, that §§ 136w-1 and 136w-2 were only intended to delegate enforcement responsibility between the states and the EPA.

The House Committee on Agriculture's report on the amendments to FIFRA states, in describing § 136w-2, that the

"*EPA* retains residual authority to act in emergency situations and to rescind any delegation [of state enforcement authority]...." H.R.Rep. No. 663, 95th Cong., 1st Sess. 1, 20 (1977) *reprinted in* 1978 U.S.Code Cong. & Ad.News. 1966, 1988, 1993 (emphasis added). In a letter from the Administrator of the EPA to the Chairman of the Committee on Agriculture, the Administrator states that the amendment would increase the states' responsibility for enforcement, "subject to residual authority for *EPA enforcement,*" *Id.* at 55, 1978 U.S. Code Cong. & Ad. News at 2028 (emphasis added). Senator Leahy, in presenting the conference report on the Federal Pesticide Act of 1978 on the Senate floor describes the state enforcement program as being designed to reduce duplication of effort, but still allowing for "*EPA override* of State jurisdiction...." 124 Cong.Rec. 29756, 29757 (1978) (emphasis added).

The legislative history indicates that §§ 136w–1 and 136w–2 were designed to delegate enforcement responsibility between the states and the EPA. It does not show that Congress intended to define a structure of power between the states and the entire Federal Government. Orkin's argument is unsupported both from a reading of the statute, and from an examination of the legislative history.

Orkin's final argument is that the Commonwealth of Virginia initiated "appropriate enforcement action" which precludes federal action under § 136w–2(a). In light of the court's finding that FIFRA does not preclude the Attorney General from bringing this action, the court need not consider this assertion.

### CONCLUSION

Absent "clear and unambiguous" language restricting the Attorney General's authority, it would be improper for this court to rule that the Attorney General does not have the authority to bring a criminal prosecution. After reviewing FIFRA, and its legislative history, this court holds that there is no such language in the Act diminishing the Attorney General's authority. Accordingly, the defendant's motion to dismiss the indictments is denied.