961 F.2d 796
 34 ERC 2117, 60 USLW 2715, 22 Envtl.
L. Rep. 21,210
 UNITED STATES of America, Arkansas Department of Pollution
Control & Ecology, Appellees,
v.
HERCULES, INC., Appellant,
Phoenix Capital Enterprises, Inc., InterCapital Industries,
Inc., Inter-Ag Corporation, C.P. Bomar, Jr., J.
Randal Tomblin, Appellees.
 No. 91-1887.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Dec. 12, 1991.
Decided April 14, 1992.
As Amended May 12, 1992.
 
 V. Robert Denham, Jr., Atlanta, Ga., argued (Charles Schlumberger, Little Rock, Ark., on the brief), for appellant.
 James A. Rogers, Washington, D.C., argued (James Wrathall, on the brief), for appellees.
 Elizabeth Peterson, Dept. of Justice, Washington, D.C., argued (Sam Blesi, Sharon Zamore, and David Shilton, on the brief), for appellee U.S.
 Before LAY,* Chief Judge, WOLLMAN and HANSEN, Circuit Judges.
 HANSEN, Circuit Judge.
 
 
 1
 Hercules, Inc. appeals from the decision of the district court[1] that approved a consent decree involving a hazardous waste site in Jacksonville, Arkansas. The district court decision is reported as United States v. Vertac Chemical Corp., 756 F.Supp. 1215 (E.D.Ark.1991). We affirm.
 
 I. Background
 
 2
 The hazardous waste site in Jacksonville, Arkansas, involved in this case was previously the location of a herbicide and pesticide manufacturing plant operated by Vertac Chemical Corporation (Vertac) and also by its prior owner, Hercules, Inc. (Hercules). Although Vertac was found to be a responsible party for the resulting environmental harm at the Jacksonville site, recovery from Vertac is limited because it sold most of its assets and has been placed into receivership. Appellant Hercules was named as a potentially responsible party and the appellees collectively referred to as the "Phoenix parties" were also identified as potentially responsible. The Phoenix parties consist of Phoenix Capital Enterprises, Inc., InterCapital Industries, Inc., Inter-Ag Corporation, C.P. Bomar, Jr., and J. Randal Tomblin. The potential liability of the Phoenix parties stems from their respective relationships with Vertac. The extensive factual background of this case has been well-developed in several district court decisions and need not be repeated here. See United States v. Vertac Chem. Corp., 756 F.Supp. 1215 (E.D.Ark.1991); United States v. Vertac Chem. Corp., 588 F.Supp. 1294 (E.D.Ark.1984); United States v. Vertac Chem. Corp., 489 F.Supp. 870 (E.D.Ark.1980).
 
 
 3
 The Jacksonville site has been the subject of litigation since 1980. The United States filed suit against Hercules and Vertac, alleging liability under the Resource Conservation and Recovery Act (RCRA), 42 U.S.C. § 6973, the Clean Water Act, 33 U.S.C. § 1251 et seq., the Refuse Act, 33 U.S.C. § 407, and Arkansas law. The United States also filed suit against the Phoenix parties alleging liability under the Comprehensive Environmental Response Compensation and Liability Act (CERCLA), 42 U.S.C. § 9607(a), RCRA, and the Federal Priority Statute, 31 U.S.C. § 3713. These actions were consolidated with a suit by the Arkansas Department of Pollution Control and Ecology (ADPCE) against Hercules and Vertac and were set for trial.
 
 
 4
 Before trial of the consolidated actions, the United States and the ADPCE entered into a proposed consent decree with the Phoenix parties. The proposed decree resolves the liability of the Phoenix parties with respect to the Jacksonville site in return for their payment of $1,840,000 for cleanup costs and $126,000 for studies of the natural resource damage at the site. The corporate Phoenix parties must also pay 33% of all future pretax profits earned through the year 2000 and 40% of the liquidation value of Phoenix Capital Enterprises in the event it is liquidated before the year 2000. In addition, the corporate Phoenix parties must limit salaries and fringe benefits, must comply with a set maximum debt-to-equity ratio, and must submit an annual audit prepared by a certified public accountant. After publicizing the proposal for comment and receiving objections by Hercules and Dow Chemical Company, the United States moved for entry of the proposed decree. Hercules opposed the motion. The district court approved the proposed decree, finding it fair, reasonable, and consistent with CERCLA and not prohibited by CERCLA. Hercules now appeals from the district court's decision.
 
 II. Discussion
 
 5
 Hercules contends that CERCLA § 122, 42 U.S.C. § 9622, limits the authority of the United States, acting through the Attorney General, to settle cases and that the settlement with the Phoenix parties does not comply with the requirements contained in CERCLA § 122. Hercules also argues that the settlement is not fair, reasonable, or consistent with CERCLA.
 
 A. CERCLA § 122
 
 6
 Pursuant to 28 U.S.C. § 516, the Attorney General has exclusive authority and plenary power to control the conduct of litigation in which the United States is involved, unless Congress specially authorizes an agency to proceed without the supervision of the Attorney General. F.T.C. v. Guignon, 390 F.2d 323, 324 (8th Cir.1968). The Attorney General's discretionary authority includes the power to enter into consent decrees and settlements. Swift & Co. v. United States, 276 U.S. 311, 331-32, 48 S.Ct. 311, 316-17, 72 L.Ed. 587 (1928). The breadth of this power is well illustrated by the Supreme Court's decision in Swift. In that case, the appellants argued that the Attorney General exceeded his authority by entering into the consent decree in question. Id. at 331, 48 S.Ct. at 316-17. The Court did not decide whether the decree could be vacated for such lack of authority because the Court did "not find in the statutes defining the power and duties of the Attorney General any such limitation on the exercise of his discretion." Id. The Court stated that the Attorney General's power to enter into consent decrees includes "the power to make erroneous decisions as well as correct ones." Id. at 332, 48 S.Ct. at 317.
 
 
 7
 Congress does have the authority to limit the power of the Attorney General. United States v. California, 332 U.S. 19, 27, 67 S.Ct. 1658, 1662, 91 L.Ed. 1889 (1947). The Supreme Court has indicated, however, that the statutory authority of the Attorney General to control litigation is not diminished without a clear and unambiguous directive from Congress. See id.; United States v. Morgan, 222 U.S. 274, 282, 32 S.Ct. 81, 82, 56 L.Ed. 198 (1911). Other courts that have more directly addressed this issue consistently require a clear and unambiguous expression by Congress. See, e.g., United States v. International Union of Operating Eng'rs, 638 F.2d 1161, 1162 (9th Cir.1979), cert. denied, 444 U.S. 1077, 100 S.Ct. 1026, 62 L.Ed.2d 760 (1980); Marshall v. Gibson's Prods., Inc., 584 F.2d 668, 676 n. 11 (5th Cir.1979) (citation omitted); United States v. Orkin Exterminating Co., 688 F.Supp. 223, 224-25 (W.D.Va.1988) (citations omitted).
 
 
 8
 Hercules asserts that CERCLA § 122 constitutes a clear and unambiguous expression of Congress's intent to limit the Attorney General's settlement authority in cost recovery actions. We reject this argument because we find CERCLA § 122 does not clearly and unambiguously limit the Attorney General's plenary authority over the control and conduct of litigation in which the United States is a party.
 
 
 9
 Review of the specific subsections of CERCLA § 122 does not reveal any clear and unambiguous express limitation of the Attorney General's ability to enter into this cost recovery settlement in the context of the compromise of ongoing litigation. Hercules argues that such limitations are contained in subsections (a) through (f) of CERCLA § 122 and that such restrictions were not complied with in the settlement in this case. Subsections (a) through (f) of CERCLA § 122, however, consistently refer to agreements for actual remedial action as opposed to agreements for the recovery of costs occasioned by environmental damage. In contrast, subsections (g) through (i) of CERCLA § 122 address cost recovery settlements, and subsection (j) applies to natural resource damage settlements. Reading the statute as a whole, it contemplates different types of settlements. The provisions limiting remedial action cleanup settlements, CERCLA § 122(a)-(f), are separate from those addressing cost recovery settlements, CERCLA § 122(g)-(i). To interpret the statute as Hercules argues would render several subsections of the statute redundant because the topics are repeated within the statute. Compare § 122(f) with § 122(g)(2) and § 122(j)(2) (covenants not to sue); compare § 122(c)(2)(B) with § 122(g)(5), (6) and § 122(h)(4) (liability of other persons who are not part of the agreement); compare § 122(d)(2) with § 122(i) (public participation procedures). Therefore, because CERCLA § 122(a)-(f) inclusive do not apply to a cost recovery settlement, those provisions cannot be said to contain any clear and unambiguous limitation on the Attorney General's plenary ability to enter into settlements of cost recovery litigation.
 
 
 10
 Of the remaining subsections that do reach cost recovery settlements, only CERCLA § 122(h) addresses the authority to settle cost recovery actions with parties whose responsibility is not de minimis.
 
 
 11
 The head of any department or agency with authority to undertake a response action under this chapter pursuant to the national contingency plan may consider, compromise, and settle a claim under section 9607 of this title for costs incurred by the United States Government if the claim has not been referred to the Department of Justice for further action. In the case of any facility where the total response costs exceed $500,000 (excluding interest), any claim referred to in the preceding sentence may be compromised and settled only with the prior written approval of the Attorney General.
 
 
 12
 CERCLA § 122(h)(1), 42 U.S.C. § 9622(h)(1) (emphasis added). This provision merely provides that the head of the Environmental Protection Agency (EPA) may make administrative cost recovery settlements in limited situations. The provision does not, however, clearly and unambiguously limit the Attorney General's inherent authority, derived from 28 U.S.C. § 516 and recognized in Swift & Co. v. United States, 276 U.S. 311, 331-32, 48 S.Ct. 311, 316-17, 72 L.Ed. 587 (1928), to make settlements of recovery cost litigation involving the United States.
 
 
 13
 In this case, the settlement of the cost recovery litigation embodied in the consent decree in question was negotiated and entered into by the Department of Justice, acting under the direction of the Attorney General and in consultation with the EPA and the ADPCE. The settlement is not an administrative settlement entered into solely by the EPA, but rather it is the compromise of cost recovery litigation by the Attorney General. Accordingly, the provisions of CERCLA § 122, including § 122(h), do not limit the Attorney General's authority to enter into the settlement at bar.
 
 
 14
 Furthermore, the statutory language of CERCLA § 122 addresses the authority of "the President" to enter into agreements and settlements involving hazardous waste sites rather than the authority of the Attorney General to compromise litigation in which the United States is a party. The statute is an affirmative grant of settlement authority as opposed to any limitation on the power of the Attorney General to settle litigation. The executive order delegating the President's authority to act under CERCLA recognizes this distinction. The President delegated authority to act under § 122 to "the heads of the Executive departments and agencies" with the concurrence of the Attorney General. Executive Order No. 12580 § 4(b)(1), reprinted in 42 U.S.C. § 9615. Notwithstanding this delegation of authority to act under § 122, however, the President reserved responsibility for the "conduct and control of all litigation arising under the Act" to the Attorney General. Id. at § 6(a). This executive order comports with our interpretation of CERCLA § 122.
 
 
 15
 B. District Court's Review of the Consent Decree
 
 
 16
 Hercules also argues that the settlement is not fair, reasonable, and consistent with CERCLA. The district court reviews a proposed consent decree for fairness, reasonableness, and adequacy. United States v. Metropolitan St. Louis Sewer Dist., 952 F.2d 1040, 1044 (8th Cir.1992) (citations omitted) (involving the Clean Water Act); accord United States v. Cannons Eng'g Corp., 899 F.2d 79, 84 (1st Cir.1990) (involving a CERCLA action). Under this standard, the district court's decision will not be disturbed unless the district court abused its discretion. Metropolitan St. Louis Sewer Dist., 952 F.2d at 1044.
 
 
 17
 The district court found that the settlement was the result of good faith arms length negotiations and contained some stringent limitations on the Phoenix parties. Vertac, 756 F.Supp. at 1219. The court also found that "the settlement represents a recovery of the maximum possible amount of money obtainable from the Phoenix parties given their net worth and their limited ability to pay." Id. The district court recognized that the settlement furthered the purposes of CERCLA because "the finite resources of the Phoenix parties are better put to use in helping to clean up the Jacksonville site than in litigation costs." Id. We find that the district court did not abuse its discretion in approving the consent decree.
 
 III. Conclusion
 
 18
 CERCLA § 122 does not limit the Attorney General's 28 U.S.C. § 516 based statutory authority to settle cost recovery litigation. The consent decree in this case embodying such a settlement is not precluded by CERCLA § 122. The district court did not abuse its discretion in finding the consent decree fair, reasonable, and consistent with CERCLA. The decision of the district court is affirmed.
 
 
 
 *
 The Honorable Donald P. Lay was Chief Judge of the United States Court of Appeals for the Eighth Circuit at the time this case was submitted and took senior status on January 7, 1992, before the opinion was filed
 
 
 [1]
 The Honorable George Howard, Jr., United States District Judge for the Eastern District of Arkansas